FILED

2007 AUG -9 P 3:01

CLERK US DISTRICT COURT ALEXANDRIA, VIRGINIA

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

**RENETTO, LLC,**
a Maryland limited liability company
9616 Hastings Drive
Columbia, Md 21046

**Plaintiff,**

v.

Case No.: 1:07cv789-GBL/TCB

**PROFESSIONAL SALES AND MARKETING GROUP, INC.,**
an Illinois corporation
3312 Commercial Ave
Northbrook, IL 60062-1909

Defendant.

* * * * * * * * * * * * *

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Renetto, LLC, by its undersigned attorneys, hereby brings the following Complaint for monetary damages against Defendant Professional Sales and Marketing Group, Inc. and in support thereof alleges as follows:

## I. PARTIES

1. Plaintiff Renetto, LLC ("Renetto") is and was at all times pertinent hereto a limited liability company organized under the laws of the State of Maryland. The members of Renetto are as follows: (1) Paul Robinette, a citizen of the state of Ohio; (2) David Reeb, a citizen of the state of Maryland; and (3) Steve Tinto, a citizen of the state of Arizona. Renetto is in the business of inventing, designing, developing, advertising, and selling consumer lifestyle products.

2.       Defendant Professional Sales and Marketing Group, Inc. ("PSM") is and at all times mentioned was a limited liability company organized under the laws of the State of Illinois. Howard Schraiberg is the chief executive officer (CEO) and sole shareholder of PSM.  PSM is in the business of manufacturing and distributing outdoor furniture.

## II.      JURISDICTION AND VENUE

3.       The jurisdiction of this court over the subject matter of this action is predicated on 28 U.S.C. § 1332 in that plaintiff and defendants are residents of different states and the amount in controversy exceeds $100,000.

4.       This Court has personal jurisdiction over PSM as PSM conducts business in the Commonwealth of Virginia and derives substantial derives financial benefit from its business dealings within the state.

5.       Venue is proper in the Eastern District of Virginia because a substantial part of the wrongs alleged herein were perpetrated in said District.

## III.     FACTS COMMON TO ALL CLAIMS FOR RELIEF

### A.     The Canopy Chair

6.       Renetto invented, designed, and developed the Renetto Canopy Chair ("Canopy Chair"), which is a folding chair including an overhead canopy to block the sun from the person sitting in the chair.

7.       Renetto applied for a patent for the Canopy Chair.  (*See* Exhibit A: U.S. Patent Application No. 20070040422 by Reed et al. for "Canopy Chair" filed on July 12, 2006).

8.       Renetto advertises and sells the Canopy Chair on two websites that it operates (*http://www.canopychair.com* and *www.renetto.com*).

9. Renetto has solely developed other related chairs including: (1) the Kids Canopy Chair; (2) the Beach Canopy Chair; (3) the Aluminum Canopy Chair; and (4) the Soft Top Canopy Chair ("Related Chairs").

10. Renetto expended substantial time, money, and effort in designing and developing the Canopy Chair and Related Chairs.

**B. <u>The Verbal Distributorship Agreement</u>**

11. In mid-2005, Renetto and PSM entered into a verbal distributorship agreement, whereby PSM would manufacture and distribute the Canopy Chair for Renetto and in turn PSM would receive fixed royalty payments per unit of Canopy Chair sold.

12. The verbal distributorship agreement required *inter alia* for PSM to (a) timely pay royalties to Renetto for sales of the Canopy Chair, (b) provide accounting reports for sales of the Canopy Chair, (c) refrain from selling to specific third parties (including Target Corporation and Kmart Corporation), and (d) maintain confidentiality of Renetto's proprietary information.

13. PSM has violated the verbal distributorship agreement. Specifically, upon information and belief, PSM significantly underreported sales of the Canopy Chair. In addition, PSM did not provide accounting reports for sales of the Canopy Chair and it approached Target Corporation and Kmart Corporation in conjunction with the sale of the Canopy Chair.

14. In response, Renetto attempted to contact PSM via telephone to restore business relations, but their efforts were unsuccessful.

15. Accordingly, on or about March 2006, Renetto informed PSM that it would no longer utilize PSM as a distributor of the Canopy Chair or Related Chairs (the "First Termination").

## C. The Memorialized Distributorship Agreement

16. The First Termination did not result in a parting of ways, but rather led to further discussions. Renetto, in good faith, presented the issues that it had with PSM which caused the first termination. Specifically, Paul Robinette met with Howard Schraiberg in April 2006.

17. As a result of the discussion, Renetto afforded PSM a second limited opportunity to correct its previous wrongdoing, and continue servicing Renetto as a distributor until December 31, 2006. Renetto and PSM memorialized the terms of this agreement in an e-mail. (*See* Exhibit B).

18. Pursuant to the memorialized agreement, Renetto expressly reserved the right to allow PSM to continue or discontinue selling the Canopy Chair in 2007. Renetto also retained the right to sell the Canopy Chair directly to the public through its own website and otherwise.

19. The written agreement also specified, *inter alia*, that PSM was to (a) pay, in a timely fashion, royalties to Renetto for sales of the Canopy Chair, (b) provide accounting reports for sales of the Canopy Chair, (c) refrain from selling to certain third parties, (d) include Renetto at sales meetings, and (e) maintain confidentiality of Renetto's proprietary information. (*See* Exhibit B.)

20. PSM again failed to fulfill its obligations that were made abundantly clear in the email distributorship agreement. Specifically, and despite the express wording of the agreement, PSM failed to timely pay royalties or provide accounting reports for sales of the Canopy Chair. In addition, PSM scheduled marketing meetings without giving Renetto the opportunity to participate or be present at them.

21. In January 2007, Renetto again voiced its concerns but afforded PSM yet another opportunity to fulfill its obligations under the agreement, this time on a month-to-month basis. PSM still continued to be derelict in fulfilling its obligations.

**D. Renetto's Termination of the Distributorship Agreement and PSM's Tortious Retaliation**

22. In April 2007, Paul Robinette, on behalf of Renetto, informed PSM that the distributorship agreement was terminated and that PSM was to cease making sales of the Canopy Chair.

23. Renetto also informed PSM that Renetto intended to allow Swimways Corporation ("Swimways") to distribute the Canopy Chair and Related Chairs. Swimways is a Virginia Beach, Virginia based company in the business of producing, marketing, and selling pool toys and other outdoor products.

24. By the end of the first quarter of 2007, Renetto began negotiating with Swimways to serve as distributor of the Canopy Chair. Renetto also began negotiating the sale of the intellectual property rights to the Canopy Chair.

25. Upon information and belief, when PSM became aware that Renetto was negotiating with Swimways, PSM attempted to interfere with Renetto's negotiation and stop the sale of the Canopy Chair and Related Chairs to Swimways.

26. Specifically, upon information and belief, PSM's Schraiberg called Swimways' Vice President and General Counsel, Anthony Vittone and told Vittone that Renetto's product was inferior, shoddy, and not worth licensing. Schraiberg also told Vittone that Renetto had licensed the Canopy Chair and Related Chairs to PSM and that Renetto did not have the authority to license the Canopy Chair and Related Chairs to Swimways.

27. In addition, upon information and belief, PSM continued making sales of the Canopy Chair after Renetto expressly instructed it to stop, and still continues.

**COUNT ONE**
**(Breach of Contract)**

28. The allegations of Paragraphs 1-27 above are incorporated by reference as if fully set forth herein.

29. Both versions– the verbal and the memorialized – of the distributorship agreement between Renetto and PSM was a valid and binding contract between the parties.

30. PSM has breached the distributorship agreement in several ways, including

a. By approaching retailers including Target Corporation and Kmart Corporation without Renetto's authorization;

b. By utilizing factories unauthorized by Renetto to manufacture the Canopy Chair and Related Chairs;

c. By failing to maintain confidentiality of Renetto's proprietary information;

d. By failing to provide full accounting reports for sales of the Canopy Chair and Related Chairs;

e. By failing to pay Renetto royalties that are due; and

f. By continuing to market, sell, and otherwise distribute the Canopy Chair and Related Chairs without authorization.

31. Renetto performed all of its duties under the distributorship agreement and at no time was in breach thereof. In addition, all conditions precedent to maintaining that action have been performed by Renetto and Renetto is otherwise in full compliance with the distributorship agreement.

32. As a direct and proximate result of the defendants' breach of contract, Renetto suffered, and will continue to suffer, immediate, irreparable and considerable damages totalling more than $100,000.

**COUNT TWO**
**(Breach of Fiduciary Duty)**

33. Renetto re-alleges and incorporates herein by reference Paragraphs 1 through 32 above.

34. At all relevant times, PSM was acting as Renetto's distributor in the marketplace, such that there was a relationship of trust and confidentiality between PSM and Renetto.

35. PSM has breached its fiduciary duty and duty of confidentiality by disclosing confidential information to Swimways, a third party whom Renetto was negotiating with.

36. PSM breached its underlying fiduciary duty to Renetto by performing the distributorship agreement in bad faith.

37. PSM's actions are, and were, intentional, willful and malicious.

38. Renetto has suffered, and will continue to suffer, irreparable injury and loss exceeding $100,000 as a result of PSM's intentional and malicious breach of fiduciary duty and duty of confidentiality.

**COUNT THREE**
**(Tortious Interference with Prospective Advantage)**

39. The allegations of Paragraphs 1-38 above are incorporated by reference as if fully set forth herein.

40. The defendants knew that Renetto was in negotiations with Swimways for the Canopy Chair and Related Chairs, and willfully and maliciously interfered with said negotiations.

41. Despite this knowledge, the defendants, without legal justification, intentionally and improperly interfered with Renetto's rights by disclosing confidential information to Swimways.

42. The defendants intentionally, and with improper motive to injure Renetto, untruthfully and unlawfully degraded the Canopy Chair and Related Chairs in effort to stop Renetto's sale of said Chairs to Swimways, without the knowledge of Renetto.

43. The negotiations between Swimways and Renetto regarding the Canopy and Related Chairs provided a clear, significant, and exclusive prospect of future economic advantage for the holder.

44. Renetto suffered from the untruthful discourse regarding said Chairs to Swimways. The tarnished negotiations between Renetto and Swimways resulted in Renetto's decreasing bargaining power and a reduced licensing fee from Swimways.

45. As a result of the defendants' past, and ongoing tortious conduct, Renetto has suffered, and will continue to suffer, irreparable injury and loss exceeding $100,000.

**COUNT FOUR**
**(Misappropriation of Products)**

46. The allegations of Paragraphs 1-45 above are incorporated by reference as if fully set forth herein.

47. Without the consent or approval of Renetto, PSM has wrongfully misappropriated, sold and/or distributed product designs that had been acquired from Renetto as the result of Renetto's significant expenditure of labor, skill, and money. Without authorization PSM is appropriating said designs and are selling them as their own. PSM is at a special

advantage in the competition because it has not been burdened with any of the development expense as Renetto has.

48. PSM's unauthorized Canopy Chair and Related Chairs are of inferior quality to Renetto's Canopy Chair and Related Chairs and, consequently, said chairs are breaking apart leaving customers dissatisfied. Customers have complained to Renetto regarding the low quality chairs that they have bought from PSM.

49. PSM's unauthorized Canopy Chair and Related Chairs are being manufactured and sold at artificially low prices, prompting Renetto's direct customers to demand like prices and eroding Renetto's profit margin.

50. As a result of PSM's misappropriating Renetto's proprietary information (as covered by US Patent Application No. 20070040422 by Reed et al. for "Canopy Chair" filed on July 12, 2006), Renetto has suffered, and continues to suffer, severe economic injury, including tarnished reputation, lost sales, profits and other compensatory damages totaling more than one hundred thousand dollars ($100,000).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief as follows:

51. That a permanent injunction issue out of this Court restraining Defendants, and their officers, agents, servants, employees, customers, and assignees from directly or indirectly making or causing to be made, selling or causing to be sold, or distributing or causing to be distributed any Canopy Chairs or Related Chairs or otherwise directly misappropriating Plaintiff's product.

52. That this Court order the Defendants, and all officers, agents, servants and employees to deliver up to this Court for destruction all Canopy Chairs or Related Chairs or otherwise directly misappropriating Plaintiff's product.

53. That the Defendants be ordered to account for and pay over all proceeds made by them from their wrongful breach of contract and to account for and pay to Plaintiff's damages in a sum determined by the Court.

54. That this Court order the Defendant to account to Plaintiff for any direct or indirect profits and revenues realized from or attributable to Defendants' manufacturing and sale of all Canopy Chairs or Related Chairs.

55. That this Court order Defendant to pay to Plaintiff the cost of this action, including reasonable attorneys fees and all other costs which may be incurred by Plaintiff.

56. That this Court grant to Plaintiff such other and further relief as it may deem just and equitable.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Renetto demands a trial by jury of all issues raised by the pleadings and triable of right by a jury.

Respectfully submitted,

Anthony F. Vittoria (VSB #41132)
Royal W. Craig
OBER, KALER, GRIMES & SHRIVER
A Professional Corporation
120 E. Baltimore Street
Baltimore, Maryland 21202
(410) 685-1120
(410) 547-0699 (facsimile)

*Attorneys for Plaintiff Renetto, LLC*

US 20070040422A1

(19) United States
(12) Patent Application Publication
(10) Pub. No.: US 2007/0040422 A1
(43) Pub. Date: Feb. 22, 2007

Reeb et al.

(54) CANOPY CHAIR

(76) Inventors: David Reeb, Columbia, MD (US); Paul Robinette, Canal Winchester, OH (US)

Correspondence Address:
WILLIAM S RAMSEY, ESQ
5253 EVEN STAR PLACE
COLUMBIA, MD 21044 (US)

(21) Appl. No.: 11/486,176

(22) Filed: Jul. 12, 2006

Related U.S. Application Data

(60) Provisional application No. 60/701,905, filed on Jul. 22, 2005.

Publication Classification

(51) Int. Cl.
*A47C 7/66* (2007.01)

(52) U.S. Cl. ........... 297/184.1; 297/184.15; 297/184.11

(57) ABSTRACT

An exemplary embodiment providing one or more improvements includes a frame which attaches to outdoor furniture, in particular to a chair, and a canopy. Embodiments can be moved from an overhead position to a behind the chair position. The frames can be moved form a collapsed to a fully extended position. In embodiments the canopy can be positioned to contain the collapsed frame and chair in the carrying position.







55
130
140
196
198
111
110
120
30
192
96
98
11
10
54
53
52
51
50
100
40
20
92
90

FIG. 1



FIG. 2



44
32
30
B
42
22
40
20
24
16
14
11
10
23
FIG. 3C
40
42
44
32
30
20
24
A
16
23
22
14
11
10
FIG. 3B
24
40
20
42
44
11
23
22
16
14
30
32
FIG. 3A



FIG. 4



FIG. 5

FIG. 7

FIG. 6

FIG. 8                    FIG. 9



FIG. 10



104
159
154
158
153
152
157
156
155
151
10
10
172
174
171
175
170
176
173
177
178
200
161
165
164
163
162
166
169
168
167

FIG. 11

Patent Application Publication Feb. 22, 2007 Sheet 10 of 21 US 2007/0040422 A1

159
158
157
102
156
155
154
153
152
151
104

FIG. 12



173
172
171
164
163
200
162
154
104
153
174
161
152
130
175
151
120

FIG. 13



FIG. 14



268
260
262
240
220
264
242
A
210
250
230
200
212
296
222
232
298
294
292
290

FIG. 15



274
275
280
281
282
283
250
276
277

FIG. 16



FIG. 17



286

288

250

FIG. 18



FIG. 19A



FIG. 19B



FIG. 19C



FIG. 20A

FIG. 20B



FIG. 21A

FIG. 21B

# CANOPY CHAIR

## CROSS-REFERENCE(S)

[0001] This application claims priority from provisional patent application Ser. No. 60/701,905, filed Jul. 22, 2005.

## STATEMENT REGARDING FEDERALLY SPONSORED RESEARCH OR DEVELOPMENT

[0002] Not Applicable.

## Reference to A "Microfiche Appendix."

[0003] Not Applicable.

## BACKGROUND

## DESCRIPTION OF RELATED ART INCLUDING INFORMATION DISCLOSED UNDER 37 CFR 1.97 AND 37 CFR 1.98.

[0004] U.S. Pat. No. 4,295,481 discloses an adjustable sunshade with a fabric covered canopy constructed out of a plastic such a polypropylene or out of metal such as aluminum or out of wood.

[0005] U.S. Pat. No. 4,635,667 discloses a canopy which is slid ably attached to the back of a chair and which may be adjusted using a tension cap.

[0006] U.S. Pat. No. 4,687,249 discloses an adjustable canopy for a beach chair in which the fabric canopy is attached to a frame by side members which project from tubular side members on the back of the chair.

[0007] U.S. Pat. No. 4,924,896 discloses a fabric covered collapsible canopy which is attached to a chair by attachment means. The canopy includes a cross-coupled truss structure support which collapses for storage.

[0008] U.S. Pat. No. 4,971,089 discloses a folding shelter with a canopy which attaches to a folding chair. The fabric canopy is supported by upper and lower struts which are attached to real rails at the back of the chair. The canopy can be collapsed and stored in a carrying case somewhat longer than a golf bag.

[0009] U.S. Pat. No. 5,096,257 discloses a sunshade for a chair having a rigid visor. The sunshade has a fabric cover which is supported by a U-shaped structure comprised of horizontal support arms and a tubular cross arm. Vertical shade support arms are attached to the back of the chair by clamps.

[0010] U.S. Pat. No. 5,873,625 discloses a folding chair with canopy in which the canopy is supported by spacer members which also form the back of the chair and by support members which are pivotally attached to the arm rests.

[0011] U.S. Pat. No. 6,789,557 discloses a sunshade which is foldable and may be attached to a chair via a novel attachment means which resembles a clamp.

[0012] The foregoing examples of the related art and limitations related therewith are intended to be illustrative and not exclusive. Other limitations of the related art will become apparent to those of skill in the art upon a reading of the specification and a study of the drawings.

## BRIEF SUMMARY

[0013] The following embodiments and aspects thereof are described and illustrated in conjunction with systems, tool and methods which are meant to be exemplary and illustrative, not limiting in scope. In various embodiments, one or more of the above-described problems have been reduced or eliminated, while other embodiments are directed to other improvements.

[0014] Embodiments include frames and canopies for outdoor furniture in which a frame or frames support the canopy, the frame capable of orientation in an overhead position and a behind the furniture position, and in any position intermediate between the overhead and behind the furniture positions.

[0015] In addition to the exemplary aspects and embodiments described above, further aspects and embodiments will become apparent by reference to the drawings and by study of the following descriptions.

## BRIEF DESCRIPTION OF THE DRAWINGS

[0016] FIG. 1 is a perspective view of an embodiment canopy attached to a chair in the overhead position.

[0017] FIG. 2 is a perspective view of an embodiment canopy attached to a chair in the behind the chair position.

[0018] FIG. 3A is a side view of an embodiment left frame in the collapsed position.

[0019] FIG. 3B is a side view of an embodiment left frame in the partially extended position.

[0020] FIG. 3C is a side view of an embodiment left frame in the fully extended position.

[0021] FIG. 4 is a side view of an embodiment of connections between the left vertical support, left forward bar, and left rear bar.

[0022] FIG. 5 is a perspective view an embodiment of a canopy in the carrying position.

[0023] FIG. 6 is a plan view of a solid-fabric embodiment of two canopy segments.

[0024] FIG. 7 is a plan view of a frame-fabric embodiment of two canopy segments.

[0025] FIG. 8 is a cross-sectional view taken at arrows 8 of FIG. 6.

[0026] FIG. 9 is a cross-sectional view taken at arrows 9 of FIG. 7.

[0027] FIG. 10 is a perspective view of an embodiment canopy attached to a chair and of the canopy folded up for carrying.

[0028] FIG. 11 is a plan view of the bottom side of a corrugated embodiment canopy.

[0029] FIG. 12. is a cross-section view of a corrugated embodiment canopy taken at arrows 10 of FIG. 11.

[0030] FIG. 13 is a perspective view of the corrugated embodiment canopy showing the droop of the forward segments.

[0031] FIG. 14 is a bottom view of a fabric covered canopy.

[0032] FIG. 15 is a perspective view of a canopy chair frame embodiment which supports a soft fabric canopy embodiment.

[0033] FIG. 16 is a plan view of the underside of a soft fabric canopy embodiment.

[0034] FIG. 17 is a plan view of the top side of a soft fabric canopy embodiment.

[0035] FIG. 18 is a perspective view of a soft fabric canopy chair embodiment in the carrying position.

[0036] FIG. 19A is a side view of a bracket chair back embodiment frame in the above the chair position.

[0037] FIG. 19B is a side view of a bracket chair back embodiment frame in the reclining chair position.

[0038] FIG. 19C is a side view of a bracket chair back embodiment frame in the behind the chair position.

[0039] FIG. 20A is a side view of a hinged chair back embodiment frame in the overhead position.

[0040] FIG. 20B is a side view of a hinged chair back embodiment frame in the behind the chair position.

[0041] FIG. 21A is a side view of a telescope chair back embodiment frame in the overhead position.

[0042] FIG. 21B is a side view of a telescope chair back embodiment frame in the behind the chair position.

## DETAILED DESCRIPTION

[0043] FIG. 1 is a perspective view of an embodiment canopy attached to a chair in the overhead position. Any suitable conventional folding chair may be used in this embodiment. The chair 90 is depicted in dashed lines in FIG. 1. The left vertical chair back 92 and right vertical chair back 192 are depicted. The embodiment canopy 100 shown in FIG. 1 is comprised of a canopy 50 which is supported by a left frame 10 and by a right frame 10. The left vertical support 11 element of the left frame 10 is attached by upper 96 and lower 98 connectors to the left vertical chair back 92. The right vertical support 110 element of the right frame 110 is attached by upper 196 and lower 198 connectors to the left vertical chair back 92. Other components of the left frame 10 visible in FIG. 1 are the left forward bar 20, left rear bar 30, and the left support arm 40, which supports the canopy 50. Other components of the right frame 110 visible in FIG. 1 are the right forward bar 120, right rear bar 130, and the right support arm 140, which supports the canopy 50. Elements of the canopy 50 which are visible in FIG. 1 include the first canopy segment 51, second canopy segment 52, third canopy segment 53, fourth canopy segment 54, and fifth canopy segment 55. The first and fifth canopy segments are termed external segments, and the second, third, and fourth canopy segments are termed internal segments. The external segments are approximately perpendicular to the plane of the internal segments when the canopy is in the overhead position. The canopy segments are hinged together on the long sides of the segments and are shown in additional detail in FIGS. 6 and 7. External segments are hinged on only one side and the internal segments are hinged on each long side. The canopy 50 is attached by connectors to left support bar 40 at the hinge between segments 51 and 52 and to right support bar 140 at the hinge between segments 54 and 55.

[0044] FIG. 2 is a perspective view of an embodiment canopy attached to a chair in the behind the chair position. The chair 90 is depicted in dashed lines in FIG. 1. In this position the left frame 10 and right frame 110 are attached to the left vertical back 92 and right vertical back 192 of the chair, respectively. In this embodiment the left frame 10 and right frame 110 are in the collapsed position with the vertical supports, forward bars, rear bars, and support arms roughly parallel. A left frame in the collapsed position is shown in more detail in FIG. 3A.

[0045] FIG. 3A is a side view of an embodiment left frame 10 in the collapsed position. Visible in FIG. 3A is the left vertical support 11, left rear bar 30, left forward bar 20, and left support arm 40. The left vertical support 11 is pivotally attached by a pivot 16 in pivot member 23 to the offset portion 24 of the left forward bar 20 which in turn is attached by pivot 42 to the left support arm 40. A clamp 22 which is attached to the pivot member 23 is not used when the left frame is in the collapsed position. The left support arm 40 is attached by a pivot 44 at one end to an offset portion 32 at one end of the left rear bar 30. The other end of the left rear bar 30 is attached by pivot 14 to the left vertical support 11.

[0046] FIG. 3B is a side view of an embodiment left frame in the partially extended position. FIG. 3B shows the same elements as in FIG. 3A. The partially extended position is reached by swinging the left support arm 40 away from the left vertical support 11 in the direction indicated by arrow A. This movement results in extension of the left forward bar 20 and left rear bar 30.

[0047] FIG. 3C is a side view of an embodiment left frame in the fully extended position. FIG. 3C shows the same elements as in FIG. 3A. The fully extended position is reached by swinging the left support arm 40 in the direction indicated by arrow B until the left forward bar 20 is approximately parallel with the left vertical support 11, the left rear bar 30 forms an obtuse angle with the left vertical support 11, and the left support arm 40 approaches a perpendicular relationship with the left vertical support 11. The frame is locked in the fully extended position by closing clamp 22 over the left rear arm 30.

[0048] A frame is returned to the collapsed position by reversal of the process depicted in FIGS. 3A, 3B, and 3C. Clamp 22 is detached from left rear arm 30, and the left rear bar 30, left forward bar 20, and left support arm 40 are moved in the opposite direction as shown in arrows A and B.

[0049] FIG. 4 is a side view of an embodiment of the connections between the left vertical support, left forward bar, and left rear bar and the pivot member when the frame is in the fully extended position. Visible in FIG. 4 is the left vertical support 11 with a pivot 14 connection at one end of the left rear bar 30. The left pivot member 23 is shown connected by a socket 17 at one end of the left pivot member 23 which receives the end of the offset 24 in the left forward bar 20. The offset 24 is a bend of about 15 degrees in the left forward bar 20. The left pivot member 23 is connected by a pivot 16 to the left vertical support 11. Clamp 22 on the other end of the left pivot member 23 is clamped about the left rear bar 30 in the fully extended position. Clamp 22 is sufficiently flexible to allow the user to engage and disengage left rear bar 30 by pressing on the frame.

[0050] Although the elements depicted in FIGS. 3A, 3B, 3C and 4 are those of the left frame, identical elements are found in the right frame.

[0051] FIG. 5 is a perspective view an embodiment of a canopy 50 in the carrying position. Visible in FIG. 5 are the 1st canopy segment 51, 2nd canopy segment 52, 3rd canopy segment 53, 4th canopy segment 54, and 5th canopy segment 55. The 1st and 5th segments are termed external segments and the 2nd, 3rd, and 4th segments are termed internal segments. When folded in the carrying position the 1st canopy segment 51 and 5th canopy segments 55 overlap. The left frame 10 and right frame 110 are in the collapsed position and are enclosed by the canopy segments when in the carrying position.

[0052] FIG. 6 is a plan view of a solid-fabric embodiment of two canopy segments. In this embodiment, 2nd canopy segment 52 and 3rd canopy segment 53 are comprised of solid panels 60 which are covered on all sides by fabric 70. Stitching 72 between the segments provides a hinge which allows movement of the connected segments.

[0053] FIG. 7 is a plan view of a frame-fabric embodiment of two canopy segments. In this embodiment, 2nd canopy segment 82 and 3rd canopy segment 84 are comprised of rectangular frames 74 which are covered on all sides by fabric 70. Stitching 72 between the segments provides a hinge which allows movement of the connected segments.

[0054] FIG. 8 is a cross-sectional view of canopy segments 52 and 53 taken at arrows 8 of FIG. 6. Visible in FIG. 8 are the solid panels 60 and the fabric 70 which encloses the panels. Also visible is the hinge 72 formed by stitching between the segments.

[0055] FIG. 9 is a cross-sectional view of canopy segments 82 and 84 taken at arrows 9 of FIG. 7. Visible in FIG. 9 are the frame 74 and the fabric 70 which encloses the panels. Also visible is the hinge 72 formed by stitching between the segments.

[0056] FIG. 10 is a perspective view of an embodiment canopy attached to a chair and of the canopy folded up for carrying. Visible in FIG. 10 is a chair 90, attached canopy in the overhead position 100, and canopy in the carrying position covered by the canopy 50.

[0057] FIG. 11 is a plan view of the bottom side 104 of a corrugated embodiment canopy 200. In this embodiment, forward segments 152, 153, 154, are attached by hinges to rearward segments 162, 163, and 164. Forward segments 151 and 155 are not attached to any rearward segments. Similarily, rearward segments 161 and 165 are not attached to any forward segments.

[0058] Forward segment 151 is attached by hinge 156 to forward segment 152, which is attached by hinge 157 to forward segment 153, which is attached by hinge 158 to forward segment 154, which is attached by hinge 159 to forward segment 155.

[0059] Rearward segment 161 is attached by hinge 166 to rearward segment 162, which is attached by hinge 167 to rearward segment 163, which is attached by hinge 168 to rearward segment 164, which is attached by hinge 169 to rearward segment 165.

[0060] Forward segment 154 is connected by hinge 171 to rearward segment 164. Forward segment 153 is connected by hinge 173 to rearward segment 163. Forward segment 152 is connected by hinge 175 to rearward segment 162.

[0061] Crescent-shaped openings 172 and 174 are cut between forward segments 154, 153, and 152 and rearward segments 164, 163, and 162, respectively. The forward edge 177 of rearward segment 165 is cut at an approximately 45° to hinge 169 forming a triangular space 170. The forward edge 178 of rearward segment 161 is cut at an approximately 45° to hinge 166 forming triangular space 176.

[0062] Slots 180, 182, 184, and 186 are cut in rearward segments 162, 163, and 164. These slots accommodate bolts attached to the support arms 140 and 40, respectively, (not shown in FIG. 12) and removably connect the canopy and frame. Washers on the bolts removably retain the canopy on the frame support arms.

[0063] FIG. 12. is a cross-section view of a corrugated embodiment canopy taken at arrows 10 of FIG. 11. Visible in FIG. 12 are the top 102 and bottom 104 of the canopy. In some embodiments the canopy is constructed of a single piece of corrugated material having flexible films on each side. The hinges 156, 157, and 159 are formed by cutting through the top surface 102, leaving the bottom surface 104 intact, thereby forming living hinges and delineating forward segments 151, 152, 153, 54, and 155, respectively.

[0064] FIG. 13 is a perspective view of the top 104 of a corrugated embodiment canopy 200 showing the droop of the forward segments. In FIG. 13, right forward bar 120 and right rear bar 140 are shown in dotted lines. This embodiment canopy while mounted has the rearward segments 162, 163, and 164 are in an approximately common plane while rearward segments 161 and 165 (not visible in FIG. 13) hang at approximately 90° to that common plane. Forward segments 152, 153, and 154 are in an approximately common plane while forward segments 151 and 155 (not visible in FIG. 13) hang at approximately 90° to that common plane. Forward segments 152, 153, and 154 droop downward due to gravity by hinges 175, 173, and 171, respectively. The droop of the forward segment eliminates the triangular spaces 175 between the forward segment 151 and rearward segment 161. The triangular space 170 between forward segment 155 and rearward segment 165 (not visible in FIG. 13) similarly is eliminated by the droop.

[0065] The droop of the forward segments has the desirable effect of countering the lifting effect of wind on the canopy while in the overhead position.

[0066] FIG. 14 is a bottom view of a fabric covered canopy. Visible in FIG. 14 is the fabric 70 which covers both surfaces of the canopy. Also visible are sleeves 74, 76, 75 and 77. The sleeves are attached to the fabric by sewing along the short sides of the rectangular sleeves. The sleeves accommodate the support arms 140 and 40 (not shown in FIG. 12) and removably connect the canopy and frame. Lateral movement of the support arms within the sleeves allow the folding and unfolding of the chair and canopy as desired while retaining the canopy in place on the support arms.

[0067] FIG. 15 is a perspective view of a canopy chair frame embodiment which supports a soft fabric canopy embodiment 200 in the overhead position. The soft fabric canopy embodiment 200 comprises flexible fabric with no frame incorporated in the fabric. The chair 290 is depicted in FIG. 15. Any conventional folding chair may be used in this embodiment. The left vertical chair back 292 and right

vertical chair back **294** are shown. Components of the left frame **210** visible in FIG. **15** are the left forward bar **220**, left rear bar **230**, and the left support arm **240**, which supports the canopy **250**, shown in dashed lines. The left forward bar **220** is attached at one end to the left vertical chair back **292** and pivotally attached at the other end to the left support arm **240**. The left rear bar **230** is pivotally attached to the left vertical chair back **292** at one end, pivotally attached to one end of the left support arm **240** at the other end, and is reversibly attached by clamp **296** to the forward bar **220**. Components of the right frame **212** have elements in structures similar to that of the left frame **210**. Visible in FIG. **15** are the right forward bar **222**, clamp **298**, right rear bar **232**, and the right support arm **242**, which supports the canopy **250**.

**[0068]** A tensioner **260** extends between the left support arm **240** and right support arm **242**. The tensioner **260** comprises a left arm **262** pivotly connected on one end to the left support arm **240** and pivotally connected at the other end to a U-shaped bracket **268** and a right arm **264** pivotally connected at one end to the right support arm **242** and at the other end to the U-shaped bracket **268**. The bracket **268** can be manually moved reciprocally back and forth in the directions shown by arrow A. When the bracket **268** is moved rearwardly in the direction of the forward bar **220** the tension between the support arms is relieved and the chair can be collapsed. When the bracket **268** is moved in the direction of the front of the canopy the distance between the support arms is increased and the tension on the canopy is increased. This maintains the configuration of the soft fabric canopy approximately in a flat plane and prevents the formation of wrinkles in the soft fabric canopy.

**[0069]** FIG. **16** is a plan view of the underside of a soft fabric canopy embodiment **250**. Visible in FIG. **16** are pockets **274**, **275**, **276**, and **277**. The pocket are formed of fabric sewed to the soft fabric embodiment **250** on three sides. Sides **280**, **281**, **282**, and **283** are not attached to the soft fabric canopy. The pockets so formed accommodate the ends of the support arms in the frames. The unattached sides of the pockets allow the movement of the support arms when the canopy chair is folded up in the carrying position. Other methods of attaching the pockets, such as riveting, fusing, and gluing, can be used to attach the pockets to the canopy.

**[0070]** FIG. **17** is a plan view of the top side of a soft fabric canopy embodiment **250**. Visible in FIG. **17** is the left zipper **286** and right zipper **288** which extend along the length of the back of the soft fabric canopy embodiment **250**. The zipper components **286** and **288** interact and secure the soft fabric canopy embodiment around the chair and frame components when the canopy and chair is folded up in the carrying position.

**[0071]** FIG. **18** is a perspective view of a soft fabric canopy chair embodiment in the carrying position. Visible in FIG. **18** is the soft fabric embodiment canopy **250** which engulfs the chair and frame components and the left zipper **286** and right zipper **288** which reversibly secure the canopy about the folded chair and frame components. It is not necessary to remove the soft fabric canopy from the frame when the chair and canopy are collapsed and the canopy is secured around the chair and frame.

**[0072]** FIG. **19A** is a side view of a bracket chair back embodiment frame in the above the chair position. Visible in FIG. **19A** is the chair **390** and left chair vertical support **392**. A bracket **394** is attached to the left chair vertical support **392**. The left rear bar **330** is pivotally attached by pivot **314** to the bracket **394**. An off set portion **332** of the left rear bar **330** is attached by a pivot **344** to one end of the left upper support bar **340**. A offset portion **324** of a left forward bar **320** is pivotally attached to bracket **394** above the attachment of the left rear bar. The left forward bar **320** is attached by a pivot **342** to the left support bar **340**. A similar frame structure is on the right side of the chair.

**[0073]** FIG. **19B** is a side view of a bracket chair back embodiment frame in the reclining chair position. Although the chair is in a reclining position, the frame and associated canopy is in the overhead position, providing maximum protection for the user from the sun or rain. The elements of FIG. **19B** are the same as in FIG. **19A** except the left chair vertical support **392** is in a reclining position and the canopy frame is inclined forward in order to keep the canopy in the overhead position and provide desired shade to the user of the chair. Additional detail concerning the pivot connection **316** of the left forward bar **320** and the pivot connection **314** of the left rear bar **330** to bracket **394** is shown in FIG. **19B**. Note that left forward bar **320** and left rear bar **330** are spaced apart so they both can be moved freely adjacent to each other and movement of one does not interfere with movement of the other.

**[0074]** FIG. **19C** is a side view of a bracket chair back embodiment frame in the behind the chair position. The elements of FIG. **19C** are the same as in FIG. **19A** and FIG. **19B** except the canopy frame has been moved to the behind the chair position.

**[0075]** FIG. **20A** is a side view of a hinged chair back embodiment frame **490** in the overhead position. In this embodiment the left chair vertical support **492** is hinged at the upper end by a pivoting connector **494** to the lower end of the left canopy arm **422**. The other end of arm **422** is pivotally attached by pivot **424** to cylindrical collar **426**. The left support arm **440** is supported by and may slide within the cylindrical collar **426**. Movement of the left support arm **440** in the cylindrical collar **426** is constrained near one end by lower pin **444** and intermediately along the length of the left support arm **440** by upper pin **442**. The left support arm **440** supports the canopy **450**. A corresponding right frame is attached at the right side of the chair.

**[0076]** FIG. **20B** is a side view of a hinged chair back embodiment frame **490** in the behind the chair position. Visible in FIG. **20B** is the left canopy support arm **422** which has been rotated at pivot **494** to a position against the left chair vertical support thereby bringing the left support arm **440** and the canopy **450** to the behind the chair position. The cylindrical collar **426** has pivoted by pivot **424** against the left canopy support arm **422**. Movement of the left support arm **440** within the cylindrical collar **426** has been constrained by the upper pin **442**. The result of this movement is to place the canopy **450** in the behind the chair position.

**[0077]** FIG. **21A** is a side view of a telescope chair back embodiment frame **590** in the overhead position. In this embodiment the left tubular chair vertical support **592** receives in telescope-like fashion and one end of left connector arm **522**. Movement of left connector arm **522** in the left chair vertical support **592** is constrained by friction. The other end of left connector arm **522** is pivotally attached by

pivot **524** to a cylindrical collar **526**. The left support arm **540** is supported by and may slide within the cylindrical collar **526**. Movement of the left support arm **540** in the cylindrical collar **526** is constrained at one end by lower pin **544** and intermediately along the length of the left support arm **540** by upper pin **542**. The left support arm **540** supports the canopy **550**. A corresponding right frame is attached at the right side of the chair.

[0078] FIG. 21B is a side view of a telescope chair back embodiment frame **590** in the behind the chair position. Visible in FIG. 20B is the left chair vertical support **592** which receives left connector arm **522**. Left connector arm **522** has been pushed into the left chair vertical support **592**. The cylindrical collar **526** has pivoted at pivot **524**. The left canopy support arm **540** has slid downward in the cylindrical collar **526** and its movement has been constrained by the upper pin **442**. The result of this movement is to place the canopy **550** in the behind the chair position.

[0079] A number of embodiment frames and canopies have been disclosed. It is anticipated that any canopy can be used with any frame.

[0080] The corrugated embodiment canopy may be constructed by any suitable light non-flexible material, such as corrugated plastic, corrugated paper, or of solid material such as wood or plastic. The hinges of the corrugated canopy segments may be any suitable hinges, such as living hinges as disclosed above or of strips of flexible material such as fabric or plastic which is attached to the edges of the segments. The hinges between the forward and rearward segments may be hinges as above or may simply be regions of the material of the canopy which is rendered flexible by virtue of their width.

[0081] The frame elements are manufactured of any suitable strong, resilient, lightweight, inexpensive material. Suitable materials include plastic, aluminum, and wood. Tubular materials are suitable. Suitable materials for the pivot element include plastic, aluminum, steel.

[0082] The solid canopy segment panel materials are any suitable strong, lightweight, relatively inflexible materials. Suitable materials include corrugated plastic, corrugated paper, foamed plastic, and fiberglass.

[0083] The frame-fabric embodiment canopy segment frames are manufactured by the same materials as the frame elements.

[0084] The canopy fabric material is any suitable strong, weather resistant, flexible material. Suitable fabrics include nylon, cotton, rayon, fiberglass fabrics and flexible plastic sheets.

[0085] The sleeves attached to the fabric material may be of the same fabric used to cover the canopy or may be made of sheets of plastic material.

[0086] An embodiment canopy in the overhead position serves to protect the chair occupant from the overhead sun. On cloudy days a chair with an embodiment canopy may be used as a conventional chair simply by moving the canopy to the behind the chair position without disassembly of the canopy or canopy support.

[0087] Although embodiments of the canopy in this disclosure have been illustrated using folding chairs only, other embodiments may be used with non-folding chairs.

[0088] In addition, other embodiments are used with virtually any other outdoor furniture. In particular, embodiments are used with hammocks, with a picnic table, or with a stool or chaise lounge. In these embodiments the canopy is supported by driving the left and right frames into the ground or by attaching the frames to appropriate structures.

[0089] While a number of exemplary aspects and embodiments have been discussed above, those of skill in the art will recognize certain modifications, permutations, additions and sub combinations thereof. It is therefore intended that the following appended claims and claims hereafter introduced are interpreted to include all such modifications, permutations, additions and sub-combinations as are within their true spirit and scope.

We claim:

1. Outdoor furniture frame and canopy comprising:

a canopy and a frame, the frame having at least two support arms,

the frame supporting the canopy, the frame capable of orientation in an overhead position, a behind the furniture position, and any intermediate position.

2. The frame and canopy of claim 1 wherein the outdoor furniture is a chair.

3. The frame of claim 1 wherein the frame comprises a vertical support element, a forward bar, a rear bar, and a support arm, the forward arm pivotally attached at one end by a pivot member to the vertical support element and at the other end pivotally attached to the to the support arm, the rear bar pivotally attached at one end to the vertical support element and at the other end pivotally attached to the support arm, the support arm capable of supporting the canopy.

4. The frame of claim 3 further comprising a clamp attached to the pivot member, the clamp capable of reversible attachment to the rear bar.

5. The frame of claim 3 wherein the vertical support element is attached to an article of outdoor furniture.

6. The frame of claim 1 wherein the frame comprises a forward bar, a rear bar, a support arm, and a tensioner, the forward attached to the outdoor furniture at one end and pivotally attached to the support arm at the other end, the rear bar pivotally attached to the outdoor furniture at one end and to the support arm at the other end, the rear bar attached by a reversible clamp to the forward bar, the tensioner fastened to the support arm and to a second support arm, the support arm capable of supporting the canopy.

7. The frame of claim 6 wherein the tensioner comprises tow arm, each arm pivotally connected to a U-shaped bracket at one end, and pivotally connected to a support arm at the other end.

8. The frame of claim 1 further comprising a bracket, a rear bar, a forward bar, and a support bar, the bracket attached to the outdoor furniture, the rear bar pivotally attached to the bracket at one end and pivotally attached to the end of the support bar at the other end, the forward bar pivotally attached to the bracket at one end and pivotally attached to the support bar at the other end, the support arm capable of supporting the canopy.

9. The frame of claim 8 wherein the attachment to the bracket of the forward bar is above the attachment to the bracket of the forward bar.

10. The frame of claim 1 further comprising a chair vertical support, a pivoting connector, an cylindrical collar

and a support arm, the pivoting connector hinged at one end to one end of the chair vertical support and pivotally connected to the cylindrical collar at the other end, the support arm supported by and capable of movement within the cylindrical collar, the support arm capable of supporting the canopy.

11. The frame of claim 1 further comprising a tubular chair vertical support, a connector arm, a cylindrical collar, and a support arm, the connector arm inserted into and supported by the tubular chair vertical support, the support arm pivotally connected to the cylindrical collar, the support arm supported by and capable of movement within the cylindrical collar, the support arm capable of supporting the canopy.

12. The canopy of claim 1 further comprising approximately rectangular external segments and approximately rectangular internal segments, the segments hinged together along the long sides, and connectors for attaching the canopy to a frame, the canopy capable of enclosing a collapsed frame and collapsed item of outdoor furniture when folded in the carrying position.

13. The canopy of claim 12 wherein the external segments are approximately perpendicular to the plane of the internal segments when the canopy is in the overhead position.

14. The canopy of claim 12 wherein the segments are constructed of rigid material covered by fabric.

15. The canopy of claim 14 wherein the rigid material is constructed of plastic, paper, foamed plastic, or fiberglass.

16. The canopy of claim 12 wherein the segments are constructed of fabric covered frames.

17. The canopy of claim 1 wherein the canopy is constructed of soft fabric.

18. The canopy of claim 17 wherein the fabric is manufactured of nylon, cotton, rayon, or fiberglass.

* * * * *

05/16/2007 12:48 18475521392 PRO SALES PAGE 01

TO PHIL HUDSON
FROM HOWARD SHRAIBERG

**Todd Shraiberg**

To: paul@paulrobinett.com
Cc: 'Howard'; tshraiberg@psmgroupinc.com
Subject: Meeting Notes

- Renetto is giving PSM Group / 4Seasons the exclusive right to sell the "Canopy Chair" from Renetto under the brand of "Canopy Chair"
- The packaging, point of purchase will be handled 100% by PSM / 4Seasons
- The "Canopy Chair" will have to be approved for functionality. With the exception of functionality of the Canopy Chair itself, PSM / Four Seasons may make alterations to the aesthetics of the chair at its discretion. Examples of aesthetic changes may include but are not limited to such things as: color, size, girth, accessories, weight capacity, etc.
- PSM / 4Seasons will pay Renetto $3/ Canopy Chair sold - except for the Winn Dixie and BJs orders. Winn Dixie is $2 / chair. BJs is $1.60/chair.
- The vendor of record for all Canopy Chairs sold will be PSM Group / 4Seasons and Renetto corp. is not liable for these Canopy Chairs sold.
- Four Seasons / PSM will not represent the Canopy Chair as a "Renetto" chair. It may however refer to the "Canopy Chair" as having the same technology as the Renetto chair and is in fact legally licensed from Renetto.
- Renetto has the right to sell the "Renetto" branded canopy chair at its discretion.
- Payment Schedule: 4Seasons / PSM agrees to pay Renetto royalties due for chairs sold by the 15th of the month for payments received on Canopy Chairs.
- PSM Group 4Seasons will not sell the "Canopy Chair" to the following retailers without authorization from Renetto:
    - Target
    - Home Depot
    - Sears/KMART
    - Walmart
    - Costco
    - Sams Club
    - Lowe's
    - HSN
    - QVC
    - Discovery Channel Store
    - .com exclusive deals (noted that individual retails may promote their "Canopy Chair" on their Web site)
- Renetto has a strong interest in selling the Renetto chair on QVC. PSM will make arrangements to present the "Renetto" chair as an exclusive product. Renetto will have representation at the sales meeting with QVC.
- Whenever Renetto authorizes PSM/4Seasons to represent the "Renetto" branded chair to a retailer, Renetto will be represented at the meeting unless they decide to not be present.
- PSM is authorized to sell the "Canopy Chair" at its discretion per the above through the 2006 calendar year. All contracts signed in the 2006 calendar year are authorized to be fulfilled into 2007.
- Renetto, at its discretion in writing prior to 12/31/06, reserves to right to authorize PSM / 4Seasons to continue or discontinue selling the "Canopy Chair" in the 2007 calendar year.
- Renetto and PSM / 4Seasons, in good faith, agree to meet in person quarterly to review the partnership agreement. PSM agrees to help offset some of the cost of the travel for Renetto.
- All information distributed between Renetto and PSM Group shall remain confidential. Specifically, patent information shall not be disclosed by PSM Group.
- Early estimates for 2006 shipments and payments in the next 90-180 days is approximately 20 containers in the neighborhood of $70,000.
    - BJs - 7 containers
    - WD - 5 containers
    - PW - 2 containers

/4/2006

[signature] 4/3/06 Renetto

[signature] 4/3/06 PSM Group, Inc.

EXHIBIT A

EXHIBIT B