# Exhibit A

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**



| | |
|---|---|
| PROFESSIONAL SALES AND MARKETING GROUP, INC., an Illinois Corporation, | ) )<br>)<br>) |
|          Plaintiff, | ) )<br>) |
|          v. | )   Case No.<br>)<br>) |
| RENETTO, LLC and SWIMWAYS Corp., | ) )<br>)<br>) |
|          Defendants, | ) |

**07CH15657**

<u>**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**</u>

Plaintiff Professional Sales and Marketing Group, Inc. ("Professional Sales") by and through the law firm of Polsinelli, Shalron, Welte, Suelthas PC, hereby sues the captioned Defendants for injunctive relief, and damages and in support states as follows:

**ALLEGATIONS COMMON TO ALL COUNTS**

**A.     Parties and Venue**

1.     Plaintiff, Professional Sales and Marketing Group, Inc. is an Illinois corporation in the business of developing, manufacturing, importing and selling lawn, patio and other outdoor furniture. Professional Sales is located in Northbrook, Cook County, Illinois. Howard Shraiberg is the CEO and sole shareholder of Professional Sales.

2.     Upon information and belief, Defendant Renetto, LLC ("Renetto") is a Maryland Limited Liability Corporation in the business of inventing certain

outdoor products. Upon information and belief, Renetto is owned by Paul Robinette, David Reeb and Steve Tinto.

3.    Swimways Corp. ("Swimways") is a Virginia Beach, Virginia based company in the business of producing, marketing and selling pool toys and other outdoor products.

4.    Plaintiff's Complaint involves certain rights involving the sale of a canopy and related chairs. The majority of the negotiation, development, engineering, marketing and sales of the Canopy Chair referenced in Plaintiffs Complaint occurred in Cook County, Illinois.

5.    Defendants Renetto and Swimways have and continue to conduct business in Cook County, Illinois.

**B.    The Canopy Chair and Related Chairs**

6.    Upon Information and belief, sometime before September 2005, employees of Renetto developed the idea of a folding chair with a canopy over the chair to block the sun from the person sitting in the chair.

7.    Renetto developed and designed the original canopy chair and thereafter applied for a patent on what was to become known as the Renetto Canopy Chair (the "Canopy Chair").

8.    Although Renetto was responsible for the original concept of a Canopy Chair, it was not capable of, or was otherwise unable, to complete the engineering necessary to prepare the chair for mass marketing that inability also prevented from producing the chair and offering it for sale in the United States and elsewhere.

2

9.    In the Fall of 2005, Howard Shraiberg in his capacity as an officer of Professional Sales met representatives of Renetto at a Hong Kong trade show and discussed the possibility of a partnership whereby Professional Sales would render engineering, production, marketing and sales expertise with respect to the development of the Canopy Chair to allow it to be brought to market.

10.    By mid 2005, Renetto and Professional Sales entered into an agreement whereby Professional Sales would provide Renetto with the necessary development, production, marketing and sales expertise to bring the Canopy Chair to the market.

11.    By the first quarter of 2006, Professional Sales completed the engineering work and pushed forward with full production of the Canopy Chair at its production facilities in China.

12.    At approximately the same time, Professional Sales had secured purchase orders from several U.S. retailers for the Canopy Chair to be sold and delivered directly to retail stores for sale to U.S. consumers.

13.    By mid-2006, Professional Sales was also developing in conjunction with Renetto certain other chairs including: (1) the Kids Canopy Chair; (2) the Beach Canopy Chair; (3) the Aluminum Canopy Chair and (4) the Soft Top Canopy Chair (collectively the "Related Chairs").

14.    Professional Sales designed, engineered, produced, sold and financed each of the "Related Chairs" with little or no help from Renetto other than design input from Renetto.

3

### C.    The Canopy Chair Sales Agreement

15.    By mid 2006, Renetto and Professional Sales reached an agreement on royalty payments to be made by Professional Sales to Renetto for each Canopy Chair sold by Professional Sales.

16.    The Renetto/Professional sales agreement (the "Sales Agreement") was reduced to writing in a e-mail transmitted from Paul Robinette of Renetto to Howard Shraiberg of Professional Sales on or about April 4, 2006. (See copy of April 6, 2006 e-mail from Paul Robinette to Howard Shraiberg attached as Exhibit A).

17.    In a meeting immediately after the receipt of the e-mail by Shraiberg, both Robinette and Shraiberg signed a copy of the April 2006 e-mail to evidence their agreement to the terms and conditions laid out in the Sales Agreement.

18.    Under the terms of the Sales Agreement, Professional Sales would pay Renetto specified amounts for each Canopy Chair sold but the chairs sold by Professional Sales would merely be referenced as Canopy Chairs.

19.    Renetto retained the right to sell what it termed the "Renetto Canopy Chair" directly to the public through its own website and otherwise.

### D.    The Related Chairs Partnership Agreement

20.    While aggressively marketing and selling the Canopy Chair, Professional Sales and Renetto were also busy designing and engineering the Related Chairs pursuant to a partnership agreement/joint venture agreement (the "Joint Venture").

4

21.    Over an approximately ten (10) month period, Professional Sales invested significant amounts of its own money to develop and engineer the Related Chairs pursuant to their partnership agreement/joint venture agreement. Renetto had little involvement in the process.

22.    Under the Joint Venture, Professional Sales duties included sole and exclusive right to develop, source, produce and sell the Related Chairs to various U.S. retailers provided that it paid Renetto an agreed price for each Related Chair sold.

23.    In April 2007, Robinette approached Shraiberg and informed Shraiberg that Renetto intended to allow Swimways rather than Professional Sales to approach Target Corporation for the purpose of selling the Canopy Chair and related products.

24.    Shraiberg responded by informing Robinette that the proposal was unacceptable and in contradiction of the terms and conditions of the Joint Venture.

### E.    The Renetto/Swimways Sale Agreement

25.    By the Spring of 2007, it was obvious to both Professional Sales and Renetto that multiple major U.S. retailers were poised to execute large purchase orders for the Canopy Chair and Related Chairs.

26.    By the end of the first quarter 2007, Professional Sales became aware that Renetto was negotiating with Swimways regarding the sale of the rights relating to the Canopy Chair.

27.    On or about May 4, 2007, Howard Shraiberg received an email from the General Counsel of Swimways Corporation informing Professional Sales that Swimways Corporation had purchased all the intellectual property relating to both the Canopy Chair and the Related Chairs. (See copy of Anthony Vittone e-mail to Howard Shraiberg dated May 4, 2007 attached as Exhibit B).

28.    The May 4, 2007 email purported to grant Professional Sales some limited rights to sell the Canopy Chair and Related Chair through and including July 1, 2007 with all such orders to be shipped from China by September 1, 2007.

### Count I – Beach of Contract
### Professional Sales v. Renetto

1-28.   Plaintiff re-alleges paragraphs 1-28 of the Allegations Common to All Counts as paragraph 1-28 of this Count I.

29.    Beginning in Fall of 2005, Shraiberg on behalf of Professional Sales began negotiating with Renetto to develop, market and sell the Canopy Chair.

30.    By mid 2006, Professional Sales had completed all the engineering and design work necessary for mass production of the Canopy Chair. Professional Sales had also submitted the prototype Canopy Chair to its Chinese manufacturing facility and secured an agreement for those production facilities to mass produce the Canopy Chair. Professional Sales expended substantial time, effort and money to assist Renetto in bringing the Canopy Chair to market.

31.    Thereafter, Professional Sales and Renetto entered into an contract whereby Professional Sales would be the exclusive outside sales representative

6

of the Canopy Chair (with Renetto as the only other entity authorized the sell the Canopy Chair).

32.     Professional Sales was granted the right by Renetto under the Sales Agreement to modify various aspects of the chair including the color, size, girth, accessories, weight and capacity of the chair. (See Exhibit A).

33.     The parties thereafter agreed that Professional Sales would pay Renetto $2.00 per Canopy Chair sold for orders of 20,000 or more, $2.50 per chairs for orders between 15,000 and 20,000 chairs, $2.75 for orders between 10,000 and 15,000 chairs and $3.00 for orders under 10,000 chairs.

34.     The Sales Agreement further provided that Professional Sales would be the vendor of record and that Renetto would not be liable for any problems associated with the sale of the Canopy Chairs to various retailers.

35.     The parties further agreed that Professional Sales had the right to sell the Canopy Chair through the end of the 2006 calendar year with deliveries of the product continuing through 2007. With respect to the 2007 Calendar year, Renetto agreed to either extend or terminate the Sales Agreement with Professional Sales by sending written notice of termination by the end of calendar 2006. (See Exhibit A).

36.     After agreeing on the material terms of their agreement with respect to the Canopy Chair, Paul Robinette sent an e-mail to Howard Shraiberg that memorialized the terms of the Renetto/Professional Sales Contract. (See Exhibit A).

37.    Renetto did not terminate the Sales Agreement at the end of 2006. In fact, following January 1, 2007, Renetto was in communication with Professional Sales to make plans regarding Professional Sales' continued sales of the Canopy Chair for the 2007 selling season.

38.    At some point in the first or second quarter of 2007, Renetto apparently decided to sell the intellectual property relating to the Renetto Canopy Chair to a third party.

39.    On May 4, 2007, Anthony Vittone, the General Counsel for Swimways sent an email to Howard Shraiberg that informed Shraiberg that Swimways had purchased the intellectual property relating to the Renetto Canopy Chair and the Related Chairs. In that email, Vittone granted Professional Sales the right to continue selling the Canopy Chair through and until July 1, 2007 provided that such sales were shipped from China by September 1, 2007. (See Exhibit B).

40.    Renetto breached its contract with Professional Sales by selling the intellectual property relating to the Renetto Canopy Chair to Swimways thereby precluding Professional Sales from pursuing its rights within the terms of the Sales Agreement.

41.    Professional Sales has suffered damages and continues to suffer damage as a result of Renetto breach. All conditions precedent to maintaining that action have been performed by Professional Sales and Professional Sales is otherwise in full compliance with the Sales Agreement.

8

Wherefore, Professional Sales and Marketing Group, Inc. hereby seeks the entry of a Judgment against Renetto, LLC in an amount in excess of $100,000 as damages resulting from Renetto's breach of the Sales Agreement.

### Count II – Breach of Partnership Agreement
### Professional Sales v. Renetto

1-28. Plaintiff re-alleges paragraphs 1-28 of the Allegations Common to All Counts as paragraph 1-28 of this Count II.

29-41. Plaintiff re-alleges paragraphs 28 – 39 of the Count I as paragraphs 28-37 of this Count II.

42.    In mid-2006, Professional Sales and Renetto agreed to form the Joint Venture to develop, manufacture and sell the Related Chairs.

43.    Professional Sales worked with its engineers, designers and other professionals both in the United States and China to develop a separate and distinct line of canopy chairs.

44.    The newly designed canopy chairs became known as : (1) the Kids Canopy Chair, (2) the Beach Canopy Chair; (3) the Aluminum Canopy Chair and the Soft Top Canopy Chair.

45.    Professional Sales invested significant amounts of time and money to design, engineer and build the Related Chairs.

46.    Professional Sales produced prototypes of each of the Related Chairs and began to offer the Related Chairs to customers in the United States and abroad.   Renetto had very little input into the development, manufacture and marketing of the Related Chairs.

9

47.    The terms of the Joint Venture provides, *inter alia*, that Professional Sales and Renetto will jointly own the intellectual property corresponding to the Related Canopy Chairs. The parties further agreed that Professional Sales would be the exclusive sales agent for the Related Chairs. Renetto has no right to unilaterally terminate Joint Venture as it has done by attempting to transfer the intellectual property rights in and to the Related Chars to Swimways.

48.    Despite the terms and conditions of the Joint Venture, Renetto sold the intellectual property involving relating to the Related Chairs to Swimways in direct violation of the terms and conditions of the Joint Venture.

49.    Professional Sales has suffered and continues to suffer economic damage as a result of Renetto's breach of the Joint Venture.

Wherefore, Professional Sales and Marketing Group, Inc. hereby seeks the entry of a Judgment against Renetto, LLC and in favor of Professional Sales and Marketing Group, Inc. for damages in an amount in excess of $100,000 based upon Renetto's breach of the Joint Venture.

### Count III – Declaratory Judgment
### Professional Sales v. Renetto and Swimways, Inc.

1-28.  Plaintiff re-alleges paragraphs 1-28 of the Allegations Common to All Counts as paragraph 1-28 of this Count III.

29-41.  Plaintiff re-alleges paragraphs 29 – 41 of Count I as paragraphs 29-41 of this Count III.

42-49.  Plaintiff re-alleges paragraphs 42 – 49 of Count II as paragraphs 42-49 of this Count III.

10

50.     This action is brought, pursuant to Illinois Code of Civil Procedures 2-701, because there is an actual controversy existing between the parties. Plaintiffs seek to resolve this controversy through entry of a judgment by this Court. Said controversy arose out of the following circumstances.

51.     Plaintiff maintains that it has a contract with Renetto that allows Plaintiff to sell the Canopy Chair through at least the end of 2007.

52.     Plaintiff further maintains that it entered into a Joint Venture with Defendant Renetto to develop, engineer, manufacture, market and otherwise sell the Related Chairs. As a result of that Joint Venture, the resulting partnership owns the rights to the Related Chairs.

53.     Sometime prior to May 4, 2007, Renetto entered into a contract with Swimways whereby Swimways purportedly purchased all the intellectual property involving the Renetto Canopy Chair and the Related Chairs. Renetto did not have the right to do so relative to the Related Chairs.

54.     Immediately after its completing its purported purchase of the intellectual property, Swimways General Counsel Anthony Vittone contacted Professional Sales via email and openly recognized that Professional Sales had certain rights to sell the Canopy Chair for a period of time. Vittone's e-mail stated:

> I wanted to confirm that Swimways has concluded its deal with Renetto on the Canopy Chair and acquired the intellectual property and exclusive worldwide sales of the product. In deference to your work in representing the product this year, we have agreed to allow PSM Group to continue to accept new orders through July 1, 2007. However, all open orders that exist now or will be written by July 1, must be shipped to the accounts no later than September 1, 2007. PSM should not accept any orders that cannot be fulfilled by September 1, 2007.

11

Vittone E-Mail dated May 4, 2007.

55.    Following receipt of the May 4, 2007 e-mail, Professional Sales retained the law firm of Arnstein & Lehr LLP to protect its legal rights. Arnstein & Lehr immediately forwarded a letter to Renetto informing Renetto of Professional Sales position that a partnership agreement existed with respect to the development of the Related Chairs. (See copy of letter of Thomas P. Yardley to Renetto dated May 25, 2007 attached hereto as Exhibit C).

56.    Renetto responded to the Arnstein & Lehr letter via a letter from their attorneys Ober Kaler which refuted Professional Sales position and asserted that the only agreement between Professional Sales and Renetto was a license agreement with fixed royalty payments that expired at the end of 2006. (See copy of letter of Royal Craig dated June 1, 2007 attached hereto as Exhibit D).

57.    Thereafter it appeared that the dispute may be resolved amicably in that counsel for Swimways Anthony Vitonne contact counsel Professional Sales and proposed a meeting to resolve the differences among the parties.

58.    A meeting was scheduled for June 4, 2006 between Swimways and Professional Sales. Unfortunately counsel for Swimways failed to appear for the meeting and thereafter forwarded a letter dated June 6, 2007 in which it rescinded its offer to allow Professional Sales to continue to market and sell the Canopy Chair and Related Chairs until July 1, 2007. (See copy of letter from Anthony Vittone dated June 6, 2007 attached hereto as Exhibit E).

59.    Based upon the positions laid out in the above referenced letters a clear dispute exists among the parties over each party's respective rights involving the Canopy Chair and Related Chair.

60.    Defendants Swimways and Renetto have improperly deprived Plaintiff of its rights in the Renetto Chair and Related Chair.

WHEREFORE, Plaintiff, Professional Sales and Marketing, Inc. pray that the Court declare the rights of the parties and find:

(a)    That Plaintiff Professional Sales and Marketing, Inc. has a contractual right to sell the Renetto Chair through the end of 2007 with royalty payments to be paid pursuant to the terms and conditions of the April 4, 2006 email between Howard Shraiberg and Paul Robinette. All such royalty payments shall be subject to the terms and conditions of the sale agreement between Renetto and Swimways;

(b)    That the partnership formed between Professional Sales and Renetto of the intellectual property involving the Related Chairs;

(c)    That the partnership between Professional Sales and Renetto is the only entity with the right to sell the Related Chairs;

(d)    Any further relief this Court deems appropriate under the circumstances.

### Count IV – Injunction
### Professional Sales v. Renetto and Swimways

1-28.    Plaintiff re-alleges paragraphs 1-28 of the Allegations Common to All Counts as paragraph 1-28 of this Count IV.

29-41.    Plaintiff re-alleges paragraphs 29 – 41 of Count I as paragraphs 29-41 of this Count IV.

42-49.    Plaintiff re-alleges paragraphs 42 – 49 of Count II as paragraphs 42-49 of this Count IV.

13

50-60. Plaintiff re-alleges paragraphs 50-60 of Count III as paragraphs 50 –60 of this Count IV.

61.     Upon information and belief, at the time Swimways purportedly purchased the intellectual property relating to the Renetto Canopy Chair and the Related Chairs, it knew or should have known of the contractual and intellectual property rights of Professional Sales involving both the Canopy Chair and the Related Chairs.

62.     Immediately after its completing its purported purchase of the intellectual property, Swimways General Counsel Anthony Vittone contacted Professional Sales via email and openly recognized that Professional Sales had certain rights to sell the Canopy Chair for a period of time. Vittone's e-mail stated:

> I wanted to confirm that Swimways has concluded its deal with Renetto on the Canopy Chair and acquired the intellectual property and exclusive worldwide sales of the product. In deference to your work in representing the product this year, we have agreed to allow PSM Group to continue to accept new orders through July 1, 2007. However, all open orders that exist now or will be written by July 1, must be shipped to the accounts no later than September 1, 2007. PSM should not accept any orders that cannot be fulfilled by September 1, 2007.

Vittone E-Mail dated May 4, 2007.

63.     Professional Sales has a clear legal right that needs protecting based upon its contract with Renetto involving the Canopy Chair and based upon the partial ownership of intellectual property involving the Related Chairs.

64.     Following receipt of the May 4, 2007 e-mail from Swimways, Professional Sales continued to negotiate contracts with major U.S. Retailers for the sale of the Renetto Chair and Related Chairs.

14

65.    Following receipt of the May 4, 2007 e-mail, Professional Sales retained the law firm of Arnstein & Lehr LLP to protect its legal rights. Arnstein & Lehr immediately forwarded a letter to Renetto informing Renetto of Professional Sales position that a partnership agreement existed with respect to the development of the Related Chairs. (See Exhibit C).

66.    Upon information and belief, Swimways is actively marketing the same Canopy Chair and the Related Chairs to various retail merchants. Thus, Professional Sales continues to incur harm from the improper actions of Defendants. Moreover, the breach by Renetto and Swimways position relative to who presently holds the right to market the chairs is causing confusion in the market and destroying the market given potential purchasers' concern over who actually has the right to market these chairs.

67.    Plaintiff will continue to suffer irreparable harm for the foreseeable future if the Defendants are not enjoined from infringing on Plaintiff's contractual and intellectual property rights based upon Defendants continuing efforts to halt Plaintiff's sales and marketing efforts involving the Canopy Chair and Related Chairs.

68.    The documents, emails and other evidence included in Plaintiff's Complaint demonstrate that Plaintiff has a clear likelihood of success in demonstrating that it has the legal right to continue to sell both the Canopy Chair and the Related Chair

Wherefore Defendant Professional Sales and Marketing Group, Inc. by and through its counsel request that this Court enjoin the Defendants as follows:

15

1.  Defendant Swimways be enjoined from interfering with Professional Sales and Marketing Group's right to market and sell the Canopy Chair pursuant to the terms and conditions of the April 6, 2006 e-mail between Howard Shraiberg and Paul Robinette.

2.  Defendant Swimways be enjoined from interfering with Professional Sales and Marketing Group's efforts to market and sell the Related Chairs;

3.  Defendant Renetto be enjoined from interfering with Professional Sales and Marketing Group's right to market and sell the Canopy Chair pursuant to the terms and conditions of the April 6, 2006 e-mail between Howard Shraiberg and Paul Robinette;

4.  Defendant Renetto be enjoined from interfering with Professional Sales and Marketing Group's efforts to market and sell the Related Chairs; selling, offering for sale, showing or otherwise representing that it is has the right to represent the Canopy Chair and the Related Canopy Chair in the marketplace;

5.  All other third parties pursing all sales of chairs be enjoined from doing so, if claiming through Renetto or Swimways.

Respectfully submitted

Professional Sales and Marketing Group, Inc.

By: _____
One of its Attorneys

Anthony J. Nasharr
John J. Curry
Carina M. C. Segalini
Polsinelli, Shalton, Welte, Suelthaus, PC
180 North Stetson Avenue, Suite 4525
Chicago, Illinois 60601
(312) 819-1900
Atty No. 29049

1154564_1.DOC

16

05/15/2007  12:48  18475521332    PRO SALES    PAGE_ 01

*TO PHIL HUDSON*
*FROM HOWARD SHRAIBERG*

**Todd Shralberg**

**To:**     paul@paulrobinett.com
**Cc:**     'Howard' tshralberg@psmgroupinc.com
**Subject:** Meeting Notes

- Renetto is giving PSM Group / 4Seasons the exclusive right to sell the "Canopy Chair" from Renetto under the brand of "Canopy Chair"
- The packaging, point of purchase will be handled 100% by PSM / 4Seasons
- The "Canopy Chair" will have to be approved for functionality. With the exception of functionality of the Canopy Chair itself, PSM / Four Seasons may make alterations to the aesthetics of the chair at its discretion. Examples of aesthetic changes may include but are not limited to such things as: color, size, girth, accessories, weight capacity, etc.
- PSM / 4Seasons will pay Renetto $3/ Canopy Chair sold - except for the Winn Dixie and BJs orders. Winn Dixie is $2 / chair, BJs is $1.50/chair.
- The vendor of record for all Canopy Chairs sold will be PSM Group / 4Seasons and Renetto corp. is not liable for these Canopy Chairs sold.
- Four Seasons / PSM will not represent the Canopy Chair as a "Renetto" chair. It may however refer to the "Canopy Chair" as having the same technology as the Renetto chair and is in fact legally licensed from Renetto.
- Renetto has the right to sell the "Renetto" branded canopy chair at its discretion
- Payment Schedule: 4Seasons / PSM agrees to pay Renetto royalties due for chairs sold by the 15th of the month for payments received on Canopy Chairs.
- PSM Group  4Seasons will not sell the "Canopy Chair" to the following retailers without authorization from Renetto:
    o Target
    o Home Depot
    o Sears/KMART
    o Walmart
    o Costco
    o Sams Club
    o Lowe's
    o HSN
    o QVC
    o Discovery Channel Store
    o .com exclusive deals (noted that individual retails may promote their "Canaopy Chair" on their Web site)
- Renetto has a strong interest in selling the Renetto chair on QVC, PSM will make arrangements to present the "Renetto" chair as an exclusive product, Renetto will have representation at the sales meeting with QVC.
- Whenever Renetto authorizes PSM/4Seasons to represent the "Renetto" branded chair to a retailer, Renetto will be represented at the meeting unless they decide to not be present.
- PSM is authorized to sell the "Canopy Chair" at its discretion per the above through the 2006 calendar year. All contracts signed in the 2006 calendar year are authorized to be fulfilled into 2007.
- Renetto, at its discretion in writing prior to 12/31/06, reserves to right to authorize PSM / 4Seasons to continue or discontinue selling the "Canopy Chair" in the 2007 calendar year.
- Renetto and PSM / 4Seasons, in good faith, agree to meet in person quarterly to review the partnership agreement. PSM agrees to help offset some of the cost of the travel for Renetto.
- All information distributed between Renetto and PSM Group shall remain confidential. Specifically, patent information shall not be disclosed by PSM Group.
- Early estimates for 2006 shipments and payments in the next 90-180 days is approximately 20 containers in the neighborhood of $70,000.
    o BJs - 7 containers
    o WD - 5 containers
    o PW - 2 containers

/4/2006

**EXHIBIT A**

05/16/2007  12:48   18475521332              PRO SALES                    PAGE  02

o  C&S – 2 containers
o  Garden Ridge – 2 containers
o  Dillards – 2 containers
o  Note: The only POs in hand at this time are 3Js, WD and C&S. The rest of the contracts are pending.

*[signature]* 9/4/06

*PSM Group, Inc.*

*[signature]* 9/4/06

— RENETO

/4/2006

06/16/2007   14:09   18475621332          PRO SALES                          PAGE   01
                                                                             Page 1 of 1

*TO JIML HODSON*
*FROM HOWARD SHRAIBER*

**Todd Shraiberg**   *PAGES 11.   THIS IS THE correspondence AT THIS*
                     *END.*

**From:**      Anthony Vittone [AVittone@swimways.com]
**Sent:**      Friday, May 04, 2007 2:40 PM
**To:**        hshraiberg@psmgroupinc.com
**Cc:**        tshraiberg@psmgroupinc.com; David Reeb; paul robinette
**Subject:**   RE: Renetto Canopy Chair
**Importance:** High

Howard --

Thank you for speaking with me earlier today.

I wanted to confirm that Swimways has concluded its deal with Renetto on the Canopy Chair and acquired the intellectual property and exclusive, worldwide sales of the product. In deference to your work in representing the product this past year, we have agreed to allow PSM Group to continue to accept new orders through July 1, 2007. However, all open orders that exist now or will be written by July 1, must be shipped to the accounts no later than September 1, 2007. PSM Group should not accept any orders that cannot be fulfilled by September 1, 2007.

As we agreed, PSM Group will not show the Canopy Chair at the National Hardware Show or any other trade shows. If you have any questions for me, please feel free to contact me (757-318-6418).

Anthony Vittone
Vice President & General Counsel
Swimways Corp.

*AGREED.*                              *— I DID NOT*
*NOTHING IN WRITING FROM*
*RENNETTO.*

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

5/16/2007

**EXHIBIT B**

LAW OFFICES

## ARNSTEIN & LEHR LLP

120 SOUTH RIVERSIDE PLAZA · SUITE 1200
CHICAGO, ILLINOIS 60606-3910
(312) 876-7100
FAX (312) 876-0288
www.arnstein.com
FOUNDED 1893

Thomas P. Yardley
(312) 876-7116
tpyardley@arnstein.com

BOCA RATON, FLORIDA
FORT LAUDERDALE, FLORIDA
MIAMI, FLORIDA
TAMPA, FLORIDA
WEST PALM BEACH, FLORIDA
HOFFMAN ESTATES, ILLINOIS
MILWAUKEE, WISCONSIN

MEMBER OF INTERNATIONAL
LAWYERS NETWORK

May 25, 2007

VIA ELECTRONIC AND REGISTERED MAIL –

Mr. Paul Robinett
Mr. David Reeb
Mr. Steve Tinto
c/o Renetto, Inc.
8558 Black Star Circle
Columbia, MD 21045

      Re:    Partnership Agreement with Professional Sales and Marketing Group, Inc.
            re: Canopy Chair

Dear Mr. Robinett, Mr. Reeb and Mr. Tinto:

Please be advised that Professional Sales and Marketing Group, Inc. ("Professional Sales") has retained the law firm of Arnstein & Lehr LLP regarding the dispute between Renetto and Professional Sales involving certain rights to the re-designed steel frame canopy chair (the "Canopy Chair"). It is the position of Professional Sales that Renetto and Professional Sales entered into a Partnership Agreement with respect to the Canopy Chair and its related products including: (1) the Kids Canopy Chair; (2) the Beach Canopy Chair; (3) the Aluminum Canopy Chair; and (4) the Soft Top Canopy Chair (collectively the "Related Chairs"). Based upon the existence of the Partnership Agreement, Professional Sales expended significant sums as part of the Partnership Agreement to develop, modify and engineer the Canopy and Related Chairs.

Over the past year or more, Professional Sales has worked continuously with Renetto Group to develop the Canopy Chair and Related Chairs. At that same time, Professional Sales worked with its existing manufacturing facilities in China to ensure that the chairs could be cost effectively and properly manufactured in China. While developing the chair, Professional Sales also arranged meetings with the buying staffs at Costco, Garden Ridge, Bass Pro Shop, K-Mart, Westlake Ace Hardware, Winn Dixie, BJ's Wholesale, Target, Dick's Sporting Goods, Orchelin, Atwoods and other retail stores approved by Renetto to offer for sale the Canopy and Related Chairs. Professional Sales intends to take all legal action necessary to protect its rights under its Partnership Agreement with Renetto as well as its rights with respect to the Canopy Chair and Related Chairs.

**EXHIBIT C**

Mr. Paul Robinett
Mr. David Reeb
Mr. Steve Tinto
Page 2

Demand is hereby made upon Renetto Inc. to cease any and all efforts to extinguish Professional Sales' rights to market, sell or otherwise distribute the Canopy Chair and Related Chairs under the terms and conditions of the Renetto/Professional Sales Partnership Agreement. Please contact me at your earliest convenience to discuss this matter or we will have no choice but to take steps to protect our legal rights.

Very truly yours,

/tpy/

Thomas P. Yardley

TPY/
Professional Sales - Demand Letter Final
(6).doc

Pursuant to Internal Revenue Service guidance, be advised that any federal tax advice in this communication, including any attachments or enclosures, was not intended or written to be used, and it cannot be used, by any person or entity for the purpose of avoiding penalties imposed under the Internal Revenue Code.



OBER | KALER
Attorneys at Law

Ober, Kaler, Grimes & Shriver
Attorneys at Law

120 East Baltimore Street
Baltimore, MD 21202-1643
410-685-1120/ Fax 410-547-0699
www.ober.com

Royal W. Craig
rwcraig@ober.com
410.347.7303

Offices in
Maryland
Washington, D.C.
Virginia

June 1, 2007

By EMAIL tpyardley@arnstein.com
CERTIFIED MAIL CONF.

Thomas P. Yardley
Arnstein & Lehr LLP
120 South Riverside Plaza • Suite 1200
Chicago, Illinois 60606-3910

Re:  PSM Group/Renetto

Dear Mr. Yardley:

        We represent the Renetto company.  Please direct all future correspondence in regard to this matter to our attention.

        There is no implied partnership agreement, nor any division of profits or control necessary to support this interpretation.  To the extent that an agreement existed, it was quite clearly a license agreement with fixed royalty payments per unit sale of the "Canopy Chair."  Per the terms of the license, PSM was only authorized to accept purchase orders for the "Canopy Chair" through the 2006 calendar year.  Renetto did not exercise its renewal option and the agreement is now terminated.  In fact, Renetto has now sold the product line including the intellectual property to Swimways, and there was nothing express or implied to prevent this.  Renetto hereby demands that PSM cease any and all efforts to market, sell or otherwise distribute the Canopy Chair immediately.

        Please inform your client that termination is not a release of their payment obligations under the agreement as they existed.  Renetto alleges that PSM has not fully accounted for their sales of Canopy Chairs sold, and has not paid the royalties that are due.  Within seventeen (17) days from the date of this letter we request that you forward an accurate list of all purchase orders received to date naming the purchaser, quantity and type of purchased chairs, date of receipt, and payments received therefore with like details.  Note that there is a strong sentiment that PSM has in the past under reported their sales, and Renetto has authorized us to take whatever action is necessary to pursue a full and honest reconciliation.  Your cooperation per the foregoing will help to avoid legal action.

        We ask that you confirm in writing that your client will cease all sales of the Canopy Chairs, and provide us with the requested reconciliation information by June 15, 2007.  Otherwise we will assume that you have no intention to respond and will take appropriate action.

**EXHIBIT D**

*Thomas P. Yardley*
*June 1, 2007*
*Page 2*

If you need additional information or would like to discuss the situation further, please contact me directly.

     This letter is without prejudice to any and all other rights and claims that Renetto may have in this matter which are expressly reserved.

                                         Sincerely,

                                         Royal Craig

RWC/mc
Cc: Steve Tinto

**SwimWays® Corp.**



5816 Ward Court
Virginia Beach, Virginia 23455

Tel. (757) 460-1156
Fax (757) 464-9281

June 6, 2007

**VIA OVERNIGHT DELIVERY & E-MAIL**

Thomas P. Yardley
Arnstein & Lehr, LLP
120 South Riverside Plaza – Suite 1200
Chicago, Illinois 60606-3910

Re: **Professional Sales and Marketing Group**

Dear Tom:

Thank you for your letter dated June 5. As I mentioned in my voicemail and e-mail, we had a scheduling conflict come up that prevented our attendance at the meeting. I apologize for any inconvenience to you or your clients. I appreciate the invitation to meet later this week, however, David Arias, president of Swimways, left today for China and will be out of the office for the next 4 weeks.

Obviously, I am not privy to all of the details of the arrangement PSM had with Renetto. However, there does not appear to be a written agreement between the parties. What does exist is a series of e-mail exchanges. If those could be considered an enforceable agreement, in none of the communications that I have seen is there a restriction (express or implied) on Renetto's ability to sell the intellectual property associated with the Canopy Chair. Moreover, there is no mention in the e-mails any reference to the 'Soft Top Canopy Chair' or the 'Beach Canopy Chair'. If you have written documentation that supports your positions, please forward it to me.

We did give permission to allow PSM to continue to sell the Canopy Chair provided they only accept new orders through July 1, 2007 and the orders are fulfilled before September 1, 2007. This was done as an accommodation to PSM, but was non-exclusive. Moreover, any new orders were not allowed to materially increase above the PO list previously supplied by PSM to Renetto. Nevertheless, I agree with you that the arrangement is unworkable. To that end, Swimways supports Renetto's position as communicated in the June 1 letter from their counsel, Royal Craig, that "PSM cease any and all efforts to market, sell or otherwise distribute the Canopy Chair immediately."

**EXHIBIT E**

# SwimWays® Corp.

Please confirm in writing as soon as possible that PSM will immediately cease and desist from any further making, using, selling, offering to sell or importing the Canopy Chair.  In the event we do not receive such assurance, Swimways will have to consider taking legal action once our patent issues and any damages will date back to the date of this letter.  This letter is without prejudice to the assertion of any and all legal remedies that we may pursue as necessary to protect our rights.

Sincerely,

Anthony F. Vittone
Vice President & General Counsel
Swimways Corp.