# Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PROFESSIONAL SALES AND MARKETING GROUP, INC., an Illinois Corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case 1:07-cv-0395 Document 25 39 Filed 10/02/2007    Page 1 of 32 No. 07 C 3951 |
| v. | ) ) | JURY TRIAL DEMANDED |
| RENETTO, LLC, a Maryland Limited Liability Corporation, | ) ) ) | |
| and | ) ) | |
| SWIMWAYS CORPORATION, a Virginia Corporation, | ) ) ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Professional Sales and Marketing Group, Inc. ("PSM Group"), by and through the law firm of Polsinelli Shalton Flanigan Suelthaus PC, complains of Defendant Renetto LLC ("Renetto") and Defendant Swimways Corporation ("Swimways") and seeks injunctive relief, damages, and other relief, and in support thereof alleges the following:

### NATURE OF THE CASE

1.     PSM Group brings this action to obtain preliminary and permanent injunctions to prevent the Defendants from interfering with PSM Group's rights to market a folding chair with a canopy ("Canopy Chair"). PSM Group also seeks damages for the Defendants' interference with its rights.

2.    As detailed further below, pursuant to a sales agreement with Renetto, PSM Group has the exclusive right to manufacture and market the Canopy Chair, designed by Renetto, through the end of 2007.

3.    PSM Group also entered into a joint venture with Renetto to jointly develop several new canopy chair designs ("Related Chairs"), which also were to be sold by PSM Group.

4.    Despite these arrangements, Renetto purportedly sold all rights to market the Canopy Chair and the Related Chairs to Swimways. Swimways and Renetto have since demanded that PSM Group stop marketing and selling the Canopy Chairs. Further, Swimways has publicly announced that it has all distribution rights to the Canopy Chairs.

5.    By these wrongful actions, Swimways has unlawfully interfered with PSM Group's rights and Renetto has unlawfully breached its obligations to PSM Group. Particularly, the Defendants have and will continue to cost PSM Group sales, customers, and profits, and could also diminish its good will and competitive position, all of which irreparably harm PSM Group.

PARTIES

6.    Plaintiff Professional Sales and Marketing Group, Inc. is an Illinois corporation in the business of sourcing, developing, importing, and selling general merchandise. PSM Group maintains its principal place of business in Northbrook, Cook County, Illinois. PSM Group is a citizen of the State of Illinois for purposes of diversity jurisdiction.

7.    Defendant Renetto, LLC is a limited liability company organized under the laws of the State of Maryland. Upon information and belief, Renetto is owned by its members Paul Robinette, David Reeb, and Steve Tinto, who are citizens of Ohio, Maryland, and Arizona,

respectively.  Upon information and belief, Renetto is a citizen of Ohio, Maryland, and Arizona for purposes of diversity jurisdiction.

8.    Upon information and belief, Defendant Swimways Corp. is a corporation organized under the laws of the Commonwealth of Virginia, with its principal place of business in Virginia Beach, Virginia.  Upon information and belief, Swimways is a citizen of the Commonwealth of Virginia for purposes of diversity jurisdiction.  Swimways is in the business of producing, marketing, and selling pool toys and other outdoor products.

## JURISDICTION AND VENUE

9.    This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a)(2) because this action is between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

10.    This court has personal jurisdiction over the Defendants because they have transacted and done business within the State of Illinois, they have made a contract substantially connected to the State of Illinois, they have committed a tortious act, and they breached a fiduciary duty within the State of Illinois, all within the meaning of 735 ILCS 5/2-209.

11.    Venue is proper in this Court under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to PSM Group's claims occurred in this judicial district.

12.    Venue is also proper in this Court under 28 U.S.C. § 1441(a) because the United States District Court for the Northern District of Illinois is the federal judicial district embracing the Circuit Court of Cook County, Illinois, where the suit was originally filed.

## FACTUAL ALLGEGATIONS COMMON TO ALL COUNTS

A.    The Canopy Chair and Related Chairs

3

13.    Upon information and belief, sometime before October 2005, employees of Renetto developed the idea of a folding chair with a canopy over the chair to block the sun from the person sitting in the chair.

14.    Renetto developed and designed the original canopy chair and thereafter applied for a patent on what was to become known as the Renetto Canopy Chair ("Canopy Chair"). No patent has issued despite the application therefor.

Case 1:07-cv-03951    Document 25    Filed 10/02/2007    Page 4 of 32

15.    Although Renetto was responsible for the original concept of a Canopy Chair, Renetto was not capable of, or was otherwise unable, completing the sales, marketing, production, and engineering necessary to prepare the chair for mass distribution. That inability also prevented Renetto from producing the chair and offering it for mass distribution in the United States and elsewhere.

16.    In October 2005, Howard Shraiberg, in his capacity as an officer of PSM Group met representatives of Renetto at a Hong Kong trade show and discussed the possibility of a partnership whereby PSM Group would render engineering, production, marketing and sales expertise with respect to the development of the Canopy Chair to allow it to be brought to market.

17.    By the close of 2005, Renetto and PSM Group entered into an agreement whereby PSM Group would provide Renetto with the necessary development, production, marketing, and sales expertise to bring the Canopy Chair to the market.

18.    By the end of the first quarter of 2006, PSM Group had completed all the engineering and design work necessary for mass production of the Canopy Chair. PSM Group had also submitted the prototype Canopy Chair to its manufacturing facilities and secured an agreement for those production facilities to mass produce the Canopy Chair. PSM Group

expended substantial time, effort, and money assisting Renetto in adapting the Canopy Chair and bringing the Canopy Chair to market.

19.    At approximately the same time, PSM Group had secured purchase orders from several U.S. retailers for the Canopy Chair to be sold and delivered directly to retail stores for sale to U.S. consumers. Renneto agreed to PSM's production and sale of the Canopy Chair at a

test level for 2006, in order to determine the strength of the product's appeal and marketability and with the intention of producing the Canopy Chair for maximum sales, if borne out by the 2006 test, in 2007.

**B.    The Sales Agreement**

20.    In April 2006, Renetto and PSM Group reached an agreement on royalty payments to be made by PSM Group to Renetto for each Canopy Chair sold by PSM Group.

21.    At a meeting on or about April 3, 2006, Paul Robinette of Renetto, Todd Shraiberg, President of PSM Group, and Howard Shraiberg, CEO of PSM Group, met to formalize the sales agreement between Renetto and PSM Group. In the course of that meeting, Robinette and Todd Shraiberg reduced the agreement to writing by Todd Shraiberg's draft of the Sales Agreement, in email format. The Sales Agreement, in email format, was printed out by Todd Shraiberg at said meeting, and signed by him and Robinette at the meeting. (A true and correct copy of the Sales Agreement is attached hereto as Exhibit A and is incorporated herein by reference.)

22.    At the time the Sales Agreement was adopted by Renetto and PSM Group, the email comprising the Sales Agreement was emailed by Todd Shraiberg to Renetto. (See Exhibit A.)

5

23.    In the Sales Agreement, Renetto granted PSM Group the exclusive right to sell the Canopy Chair.

24.    PSM Group agreed to pay Renetto specified amounts for each Canopy Chair sold.

25.    Renetto retained the right to sell the Canopy Chair directly to the public through its own website and otherwise under the brand name "Renetto Canopy Chair". The Canopy Chair sold by PSM Group under the agreement was called "The Canopy Chair".

Case 1:07-cv-03951    Document 25    Filed 10/02/2007    Page 6 of 32

26.    Renetto agreed that PSM Group could make, at its discretion, aesthetic changes to the Canopy Chair, including changes in color, size, girth, accessories, and weight capacity.

27.    Renetto and PSM Group further agreed that PSM Group had the exclusive right to sell the Canopy Chair through the end of the 2006 calendar year, with deliveries of the product continuing into 2007. With respect to the 2007 Calendar year, Renetto agreed to either extend or terminate the Sales Agreement with PSM Group by sending written notice of termination by December 31, 2006.

28.    Around the end of the first quarter of 2006, because the 2006 test marketing was highly successful and indicated a strong market, PSM Group, with Renetto's knowledge, began producing the Canopy Chair in large quantities at its manufacturing facilities for sale. PSM Group also began to secure the initial orders for the Canopy Chair.

29.    By the end of the second quarter 2006, PSM Group was tendering royalty payments to Renetto for sales of the Canopy Chair pursuant to the terms and conditions of the Sales Agreement.

C.    **Continuation of Sales Agreement**

30.    Renetto did not terminate the Sales Agreement at the end of 2006. Renetto did not provide PSM Group with any notice, written or otherwise, prior to December 31, 2006,

6

stating, referencing, or otherwise indicating its intent to terminate the Sales Agreement. At no time from the execution of the Sales Agreement in April 2006 through March 2007 did anyone from Renetto ever inform or otherwise convey any intent to terminate the Sales Agreement.

31.    Moreover, through its own words and actions, Renetto authorized, permitted, and encouraged, PSM Group to continue selling the Canopy Chair through the 2007 calendar year.

After January 1, 2007, Renetto representatives frequently communicated and worked with PSM Group representatives, either by email or over the phone, regarding sales of the Canopy Chair and continuing plans regarding PSM Group's continued sales of the Canopy Chair for the 2007 selling season.

32.    Renetto also continued to honor the terms and conditions of the Sales Agreement by supporting and otherwise providing assistance to PSM Group in its efforts to market and sell the Canopy Chair and Related Chairs in 2007.

33.    Based upon said lack of notice and Renetto's said undertakings, PSM Group continued to market and sell the Canopy Chair after December 31, 2006.

34.    Through April 2007, Renetto continued to forward customers interested in the Canopy Chair to PSM Group so that the PSM Group could take and fulfill the orders.

D.    The Joint Venture on the Related Chairs

35.    Also, beginning in 2006, PSM Group was also working with Renetto to develop certain other chairs including: (1) the Kids Canopy Chair; (2) the Beach Canopy Chair; (3) the Aluminum Canopy Chair, and (4) the Soft Top Canopy Chair (collectively the "Related Chairs").

36.    PSM Group entered into a joint venture with Renetto to design, engineer, produce, and market the Related Chairs. Under the joint venture, the parties agreed that PSM Group would have the sole and exclusive right to develop, source, produce, and sell the Related

7

Chairs to various U.S. retailers and that PSM Group would pay Renetto an agreed price for each Related Chair sold.

37.   Further, as stated in the Sales Agreement, Renetto granted PSM Group the right to make changes to the Canopy Chair so that PSM Group would have the ability to design and develop the Related Chairs at price points and in styles best suited to maximize revenue.

Case 1:07-cv-03951    Document 25    Filed 10/02/2007    Page 8 of 32

38.   Over an approximately ten (10) month period, PSM Group invested significant amounts of its own money to develop, market, and engineer the Related Chairs pursuant to the joint venture agreement. Renetto contributed to the joint venture by assisting in the design of the Related Chairs.

39.   PSM Group and Renetto regularly traded and exchanged samples of the Related Chairs for use in sales presentations with major retailers.

40.   By the end of March 2007, pursuant to the joint venture, Renetto had approved the Kiddy Chair and other Related Chairs for sale by PSM Group. As late as April 4, 2007, Renetto had samples of the Related Chairs in its possession, provided to it by PSM Group which PSM Group had subsequently recovered from Renetto by request so that PSM Group could show the Related Chairs to its existing customers.

41.   By the spring of 2007, multiple major U.S. retailers were poised to execute large purchase orders for the Canopy Chair and Related Chairs, based upon PSM Group's efforts as part of the joint venture.

E.   **The Purported Agreement between Renetto and Swimways**

42.   On or about May 4, 2007, Howard Shraiberg of PSM Group received an e-mail from Anthony Vittone, Swimways' general counsel and vice-president, claiming that Swimways had acquired from Renetto "the intellectual property and exclusive, worldwide sales of" the

8

Canopy Chair. (A true and correct copy of the Anthony Vittone e-mail to Howard Shraiberg dated May 4, 2007 is attached as Exhibit B and is incorporated herein by reference).

43.    In the May 4, 2007 e-mail, Swimways also offered to allow PSM Group a limited right to sell the Canopy Chair and Related Chair through and including July 1, 2007 with all such orders to be shipped by September 1, 2007.

44.    In a subsequent letter from counsel from Renetto, PSM Group was ordered to cease any and all efforts to market, sell or otherwise distribute the Canopy Chair immediately. (A true and correct copy of the letter from Royal Craig dated June 1, 2007 is attached as Exhibit C and is incorporated herein by reference).

45.    On or about June 7, 2007, Swimways issued a press release that it had acquired ownership of the Canopy Chair from Renetto and that Swimways had the distribution rights to the Canopy Chair. (A true and correct copy of the press release is attached as Exhibit D and is incorporated herein by reference).

46.    In the press release, Swimways stated that it had also announced this purported acquisition at its 2007 Sales & Marketing Meeting in Virginia Beach.

47.    In the press release, Swimways also claims that it had partnered with Renetto to develop additional outdoor furniture ideas.

48.    Swimways has and continues to make the press release available for download at http://www.swimways.com/retailer/breakingnews.asp.

49.    By wrongfully holding itself out as the authorized distributor of the Canopy Chair, Swimways has confused potential customers as to what entity is authorized to market the Canopy Chair.

9

50.    Further, Swimways has begun to market the Canopy Chair to customers and, upon information and belief, has secured purchase orders for the Canopy Chair and the Related Chairs.

51.    By entering the market, Swimways has caused customers to doubt PSM Group's clear and exclusive right to market the Canopy Chair.  Since Swimways has released its press release, customers have refused to place orders for the Canopy Chairs with PSM Group, citing

Case 1:07-cv-03951    Document 25    Filed 10/02/2007    Page 10 of 32

the claims made in Swimways' press release.  Accordingly, it is currently impossible for PSM Group to market the Canopy Chair.

### Count I - Beach of Contract

### PSM Group v. Renetto

52.    Plaintiff restates and re-alleges all preceding paragraphs of this Amended Complaint as if fully set forth herein.

53.    PSM Group and Renetto entered into a contract whereby PSM Group would be the exclusive outside sales representative of the Canopy Chair (with Renetto as the only other entity authorized the sell the Canopy Chair).

54.    The terms of the contract were memorialized in the Sales Agreement, which was signed by both PSM Group and Renetto.  (See Exhibit A.)

55.    The parties agreed supplementally to that agreement that PSM Group would pay Renetto $2.00 per Canopy Chair sold for orders of 20,000 or more, $2.50 per chairs for orders between 15,000 and 20,000 chairs, $2.75 for orders between 10,000 and 15,000 chairs and $3.00 for orders under 10,000 chairs.

56.    The parties further agreed that PSM Group had the right to sell the Canopy Chair through the end of the 2006 calendar year with deliveries of the product continuing through 2007.

10

57.    With respect to the 2007 Calendar year, Renetto agreed to either extend or terminate the Sales Agreement with PSM Group by sending written notice of termination by the end of calendar 2006. (See Exhibit A).

58.    Renetto did not terminate the Sales Agreement at the end of 2006. Rather, through its dealings with PSM Group, work and collaboration on the sale of the Canopy Chair in

both 2007 and 2008, planning and preparation for a 2007 show, collaboration on test programs for additional sales in 2008, further development of the Related Chairs, and all other actions alleged hereinbefore, Renetto extended the Sales Agreement through the 2007 calendar year. Based upon the lack of notice and the dealings between the parties, it was the reasonable expectation of both Renetto and PSM Group that Renetto had extended the Sales Agreement through the 2007 selling season.

59.    At some point in the first or second quarter of 2007, Renetto purportedly sold the intellectual property relating to the Canopy Chair and an exclusive right to sell the Canopy Chair to Swimways.

60.    On June 1, 2007, Renetto ordered PSM Group to immediately cease any and all efforts to market, sell or otherwise distribute the Canopy Chair. In doing so, by its sale to Swimways, Renetto abused its discretion under the Sales Agreement and acted unreasonably and in a manner completely inconsistent with the reasonable expectations of the parties, thereby acting in bad faith in violation of the implied covenant of good faith and dealing.

61.    By selling its intellectual property to Swimways, by granting Swimways a right to sell the Canopy Chair, and by ordering PSM Group to cease marketing the Canopy Chair, Renetto has breached the material terms of the Sales Agreement with PSM Group.

11

62.    PSM Group has suffered damages and continues to suffer damage as a result of Renetto's breach.

63.    All conditions precedent to maintaining that action have been performed by PSM Group and PSM Group is otherwise in full compliance with the Sales Agreement.

WHEREFORE, Plaintiff Professional Sales and Marketing Group, Inc. hereby prays for an entry of a Judgment against Defendant Renetto, LLC awarding:

Case 1:07-cv-03951     Document 25     Filed 10/02/2007     Page 12 of 32

A.        An amount in excess of $100,000 as damages resulting from Renetto's

          breach of the Sales Agreement;

B.        PSM Group's attorneys fees, expenses, and costs; and

C.        Such other relief as this Court deems just and appropriate.

### Count II – Breach of Fiduciary Duty under Joint Venture

### PSM Group v. Renetto

64.    Plaintiff restates and re-alleges all preceding paragraphs of this Amended Complaint as if fully set forth herein.

65.    In mid-2006, PSM Group and Renetto formed the Joint Venture to develop, manufacture and sell the Related Chairs.

66.    PSM Group worked with its engineers, designers, and other professionals to develop a separate and distinct line of canopy chairs, which were the Related Chairs, and Renetto collaborated with PSM Group in the development of the Related Chairs. PSM Group also provided Renetto with samples of the Related Chairs to Renetto.

67.    The newly designed canopy chairs became separately known as: (1) the Kids Canopy Chair, (2) the Beach Canopy Chair; (3) the Aluminum Canopy Chair and the Soft Top Canopy Chair.

12

68.    PSM Group invested significant amounts of time and money to design, engineer and build the Related Chairs.

69.    PSM Group produced prototypes of each of the Related Chairs and began to offer the Related Chairs to customers in the United States and abroad. In addition, PSM Group sold the Aluminum Canopy Chair to a major United States retailer.

Case 1:07-cv-03951    Document 25    Filed 10/02/2007    Page 13 of 32

70.    PSM Group and Renetto agreed that under the Joint Venture PSM Group and Renetto would jointly develop and sell the Related Canopy Chairs.

71.    The parties further agreed that PSM Group would be the exclusive sales agent for the Related Chairs.

72.    PSM Group and Renetto both jointly had the right to exercise control over the design, production, distribution, and marketing of the Related Chairs.

73.    PSM Group and Renetto agreed that profits and losses from sales of the Related Chairs would constitute profits and losses of the Joint Venture.

74.    Because it entered into the Joint Venture with PSM Group, Renetto owed PSM Group fiduciary duties.

75.    Renetto breached its fiduciary duties to PSM Group by selling the intellectual property relating to the Related Chairs and the right to market the Related Chairs to Swimways without fair notice to PSM Group.

76.    PSM Group has suffered and continues to suffer economic damage as a result of Renetto's breach of the Joint Venture.

WHEREFORE, Plaintiff Professional Sales and Marketing Group, Inc. hereby prays for the entry of a Judgment against Renetto, LLC and in favor of Plaintiff awarding:

13

A.   Damages in an amount in excess of $100,000 based upon Renetto's breach of its

fiduciary duties under the Joint Venture;

B.   PSM Group's attorneys fees, expenses, and costs; and

C.   Such other relief as this Court deems just and appropriate.

## Count III – Tortious Interference with Contract

### PSM Group v. Swimways

77.   Plaintiff restates and re-alleges all preceding paragraphs of this Amended
Complaint as if fully set forth herein.

78.   PSM Group had a valid and enforcement Sales Agreement with Renetto, pursuant
to which PSM Group had the exclusive right to distribute and sell the Canopy Chairs.  At all
relevant times, Swimways knew of the Sales Agreement and/or its existence.

79.   PSM Group received an economic benefit from its Sales Agreement with Renetto
in that it profited from the sales of the Canopy Chairs.

80.   Upon information and belief, and upon the reasonable belief that further
investigation and discovery would show evidence of the following, Swimways interfered with
PSM Groups' rights under the Sales Agreement with Renetto by the following acts:

A.   Swimways induced and encouraged Renetto to breach its Sales Agreement with
PSM Group;

B.   Swimways acquired the intellectual property rights to the Canopy Chair from
Renetto;

C.   Swimways acquired an exclusive right to distribute and sell the Canopy Chair
from Renetto;

14

D.    Swimways announced that it was the exclusive seller and distributor of the Canopy Chair; and

E.    Swimways has begun marketing the Canopy Chair to customers.

81.    As a result of these acts by Swimways, Renetto breached its contract with PSM Group.

82.    Upon information and belief, as stated hereinbefore, Swimways' actions set forth above were made without justification and with the intent of interfering with the Sales Agreement between Renetto and PSM Group.

83.    Upon information and belief, as stated hereinbefore, Swimways' interference with PSM Group's Sales Agreement with Renetto was willful, wanton, and knowing.

84.    By reason of Swimways' wrongful interference with PSM Group's Sales Agreement with Renetto, PSM Group has suffered and continues to suffer economic damage.

WHEREFORE, PSM Group respectfully prays for an entry of Judgment against Swimways awarding:

A.    Actual damages in an amount in excess of $100,000 based upon Swimways' tortious interference with the Sales Agreement;

B.    Punitive damages in an amount appropriate to punish Swimways for its will, wanton, and knowing conduct;

C.    PSM Group's attorneys fees, expenses, and costs; and

D.    Such other relief as this Court deems just and appropriate.

## Count IV – Tortious Interference with Business Expectancy

### PSM Group v. Swimways

85.    Plaintiff restates and re-alleges all preceding paragraphs of this Amended Complaint as if fully set forth herein.

86.    PSM Group entered into a joint venture with Renetto to design, engineer, produce, and market the Related Chairs. Under the joint venture, the parties agreed that PSM Group would have the sole and exclusive right to develop, source, produce, and sell the Related Chairs to various U.S. retailers and that PSM Group would paid Renetto an agreed price for each Related Chair sold.

87.    PSM Group had a reasonable expectation of continuing its Joint Venture with Renetto. PSM Group also had a reasonable expectation of a renewal of its Sales Agreement after 2007. At all relevant times, Swimways knew of these business expectancies.

88.    PSM Group had a reasonable expectation of receiving an economic benefit from its Joint Venture with Renetto in that it would profit from the sales of the Related Chairs. At all relevant times, Swimways knew of these business expectancies.

89.    Upon information and belief, and upon the reasonable belief that further investigation and discovery would show evidence of the following, Swimways interfered with PSM Groups' reasonable expectancy of continuing its Joint Venture with Renetto by the following acts:

    A.    Swimways induced and encouraged Renetto to breach its duties under the Joint Venture with PSM Group and terminate its business relationship with PSM Group;

    B.    Swimways acquired the intellectual property rights to the Related Chair from Renetto;

16

    C.      Swimways acquired an exclusive right to distribute and sell the Related Chair from Renetto; and

    D.      Swimways wrongfully took possession and control of proprietary information belonging jointly to PSM Group and Renetto related to the Chairs.

90.     As a result of these acts by Swimways, Renetto terminated its Joint Venture with PSM Group and ended all of its business relationships with PSM Group.

91.     Upon information and belief, as stated hereinbefore, Swimways' actions set forth above were made with the intent of interfering with PSM Groups' reasonable expectancy of continuing its Joint Venture and its business relationship with Renetto.

92.     Upon information and belief, as stated hereinbefore, Swimways' interference with PSM Groups' reasonable expectancy of continuing its Joint Venture with Renetto was willful, wanton, and knowing.

93.     By reason of Swimways' wrongful interference with PSM Groups' reasonable expectancy of continuing its Joint Venture with Renetto, PSM Group has suffered and continues to suffer economic damage.

WHEREFORE, PSM Group respectfully prays for an entry of Judgment against Swimways awarding:

    A.      Actual damages in an amount in excess of $100,000 based upon Swimways' tortious interference with the PSM Groups' reasonable expectancy of continuing its Joint Venture with Renetto;

    B.      Punitive damages in an amount appropriate to punish Swimways for its will, wanton, and knowing conduct;

    C.      PSM Group's attorneys fees, expenses, and costs; and

D.    Such other relief as this Court deems just and appropriate.

### Count V – Injunction

### PSM Group v. Renetto and Swimways

94.    Plaintiff restates and re-alleges all preceding paragraphs of this Amended
Complaint as if fully set forth herein.

95.    Pursuant to the Sales Agreement, the Joint Venture, and the course of dealings
with Renetto, PSM Group has a clear legal right to be the sole distributor and marketer of the
Canopy Chair and a clear legal right in the design and future sales of the Related Chairs.

96.    Renetto has purported to sell all intellectual property rights in the Related Chairs
to Swimways. Further, Renetto has purportedly granted Swimways the right to exclusively sell
the Canopy Chair and Related Chairs.

97.    On or about June 7, 2007, Swimways issued a press release that it had acquired
ownership of the Canopy Chair from Renetto and that Swimways had the distribution rights to
the Canopy Chair. (A true and correct copy of the press release is attached as Exhibit D and is
incorporated herein by reference).

98.    In the press release, Swimways stated that it had also announced this purported
acquisition at its 2007 Sales & Marketing Meeting in Virginia Beach.

99.    In the press release, Swimways also claims that it had partnered with Renetto to
develop additional outdoor furniture ideas.

100.    Swimways has and continues to make the press release available for download at
http://www.swimways.com/retailer/breakingnews.asp.

18

101.    By wrongfully holding itself out as the authorized distributor of the Canopy Chair, Swimways has confused potential customers as to what entity is authorized to market the Canopy Chair and the Related Chairs.

102.    Further, Swimways has begun to market the Canopy Chair to customers, and, upon information and belief, has obtained purchase orders for the Canopy Chair and Related Chairs.

103.    By entering the market, Swimways has caused customers to doubt PSM Group's clear and exclusive right to market the Canopy Chair and the Related Chairs. Since Swimways has released its press release, customers have refused to place orders for the Canopy Chairs and Related Chair with PSM Group, citing the claims made in Swimways' press release. Accordingly, it is currently impossible for PSM Group to market the Canopy Chair.

104.    Renetto's and Swimways' wrongful conduct has and will continue to cause irreparable harm to PSM Group if an injunction is not issued. Swimways' conduct erodes and will continue to erode PSM Group's exclusive rights by directly competing for Canopy Chair and Related Chair orders.

105.    By entering the market, Swimways has and will cause customers to doubt PSM Group's clear and exclusive right to market the Canopy Chair and the Related Chairs. If PSM Group's exclusive rights are not protected by immediate injunctive relief, Swimways has and will harm PSM Group by reducing the orders of Canopy Chairs it receives, and barring sales of the Related Chairs, and thus reducing PSM Group's profits.

106.    The confusion among customers caused by the Defendants' conduct has and will irreparably harm PSM Group's good will and competitive position in the market.

107.    The benefit of an injunction protecting the PSM Group's rights outweighs any harm suffered by the Defendants.

108.    PSM Group has no adequate remedy at law.

109.    Granting the injunction in this commercial dispute between private parties will not have any negative impact on the public interest. Indeed, the public interest is served by the Court enforce the parties' private contractual rights.

110.    The only practical means of preventing the above irreparable harm to the PSM Group is through the imposition of the requested injunctive relief.

WHEREFORE Plaintiff Professional Sales and Marketing Group, Inc. respectfully prays that this Court enjoin the Defendants as follows:

A.    Defendant Swimways be enjoined from interfering with PSM Group and Marketing Group's right to market and sell the Canopy Chair pursuant to the terms and conditions of the Sales Agreement;

B.    Defendant Swimways be enjoined from interfering with PSM Group and Marketing Group's efforts to market and sell the Related Chairs;

C.    Defendant Renetto be enjoined from interfering with PSM Group and Marketing Group's right to market and sell the Canopy Chair pursuant to the terms and conditions of the Sales Agreement;

D.    Defendant Renetto be enjoined from interfering with PSM Group and Marketing Group's efforts to market and sell the Related Chairs; selling, offering for sale, showing or otherwise representing that it is has the right to represent the Canopy Chair and the Related Canopy Chair in the marketplace; and

20

E.    All other third parties pursing all sales of chairs be enjoined from doing so, if claiming through Renetto or Swimways.

**Count VI – Declaratory Judgment**

**PSM Group v. Renetto and Swimways**

111.    Plaintiff restates and re-alleges all preceding paragraphs of this Amended Complaint as if fully set forth herein.

112.    This claim is brought pursuant to 28 U.S.C. § 2201(a), because there is an actual controversy existing between the parties which require resolution through entry of judgment by this court.

113.    Despite several demands made in 2007 by PSM Group and its representatives to Renetto and Swimways to honor PSM Group's rights, Renetto and Swimways have refused to either honor PSM Group's rights or agree to a reasonable resolution of the dispute.

114.    As shown hereinbefore, a clear dispute exists among the parties over each party's rights involving the Canopy Chair and the Related Chairs.

115.    Swimways and Renetto have improperly deprived PSM Group of its rights in the Renetto Chair and the Related Chair.

WHEREFORE, PSM Group prays that the Court declare the rights of the parties and find:

A.    PSM Group has a contractual right to sell the Renetto Chair through the end of 2007 pursuant to the Sales Agreement;

B.    PSM Group is entitled to full enjoyment of its rights under the Joint Venture formed with Renetto for the Related Chair and that PSM Group and Renetto are the role entities entitled to produce and sell the Related Chairs; and

21

C.    That PSM Group is entitled to any further declaration of rights and other relief
this Court deems appropriate.

### Count VII – Quantum Meruit

### PSM Group v. Renetto and Swimways

116.    Plaintiff PSM Group pleads a claim for quantum meruit in the alternative to other
theories of recovery pleaded.

Case 1:07-cv-03951   Document 25   Filed 10/02/2007   Page 22 of 32

117.    Plaintiff restates and realleges paragraphs 1 through 51, 65 through 74, and 97
through 103 as this paragraph 117 as if fully set forth herein.

118.    From 2005 through 2007, PSM Group engaged in substantial work, expending the
time, talent, and efforts of its personnel and incurring costs, to engineer, design, and develop the
Canopy Chair for mass distribution.  As a result, by 2006, PSM Group had produced for Renetto
a Canopy Chair that was marketable in mass distribution.

119.    In 2006, PSM Group conducted and completed test marketing of the Canopy
Chair developed by it for mass distribution.  The results of the test indicated that PSM Group had
developed a highly marketable Canopy Chair worthy of mass production.

120.    From 2006 through 2007, PSM Group engaged in substantial work, expending the
time, talent, and efforts of its personnel and incurring costs, to sell the PSM Group-developed
Canopy Chair to retailers for the benefit of Renetto. ·

121.    Upon information and belief, the aforesaid sales efforts have also accrued to the
benefit of Swimways, which has enjoyed the benefit of selling the Canopy Chair to retailers who
indicated a desire to purchase the chair as a direct result of PSM Group's marketing and sales
work with said retailers through June 2007.

122.    Between 2005 and 2007, PSM Group has expended substantial effort to engineer, develop, and produce the Related Chairs. During that time and later, Renetto and, as of May 2007, Swimways, have taken control of the Related Chairs.

123.    PSM Group has not received any compensation from either Renetto or Swimways for the work alleged herein.

124.    The work performed by PSM Group has conferred a quantifiable, substanital benefit on Renetto and Swimways.

125.    Based upon the foregoing, PSM Group is entitled to recover compensation for its work performed in relation to the Canopy Chair and the Related Chairs, and Renetto and Swimways are liable to PSM Group for payment of compensation to PSM Group on account of the benefit they have enjoyed as a result of PSM Group's work.

WHEREFORE, PSM Group prays for an entry of judgment against Defendants Renetto LLC and Swimways Corporation awarding:

A.    An amount in excess of $100,000 in quantum meruit; and

B.    Such other relief as this Court deems just and appropriate.

## JURY DEMAND

126.    Plaintiff demands a trial by jury on all issues so triable.

23

Respectfully submitted,

POLSINELLI SHALTON FLANIGAN SUELTHAUS PC

By: /s/ John J. Curry, Jr.
ANTHONY J. NASHARR  (#6185855)
JOHN J. CURRY JR.  (#3121647)
CARINA M. SEGALINI  (#6287348)
Two Prudential Plaza
180 N. Stetson Avenue, Ste. 4525
Chicago, IL 60601
(312) 819-1900
Fax No. (312) 819-1910

ATTORNEYS FOR PLAINTIFF
PROFESSIONAL SALES AND MARKETING GROUP

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2007, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

William A. Chittenden, Esq.
Morgan J. Milner
Chittenden, Murday & Novotny LLC
303 West Madison Street, Suite 1400
Chicago, IL 60606

John A. Bannon, Esq.
Ganesh K. Faler, Esq.
Ayad P. Jacob, Esq.
Schiff Hardin LLP
6600 Sears Tower
Chicago, IL 60606

David C. Burton, Esq.
Poynter R. William, Esq.
Williams Mullen
222 Central Park Avenue, Suite 700
Virginia Beach, VA 23462

/s/ John J. Curry

053365 / 118245
JJCUR 19610

25

05/16/2007  12:49  18475521332          PRO SALES                    PAGE  01

*TO PHIL HUDSON*
*FROM HOWARD SHRAIBERG*

**Todd Shraiberg**

To:      paul@paulroblnett.com
Cc:      Howard: tshraiberg@psmgroupinc.com
Subject: Meeting Notes

- Renetto is giving PSM Group the exclusive right to sell the "Canopy Chair" from Renetto under the brand of "Canopy Chair"
- The packaging, point of purchase will be handled 100% by PSM / 4Seasons
- The "Canopy Chair" will have to be approved for functionality. With the exception of functionality of the Canopy Chair itself, PSM / Four Seasons may make alterations to the aesthetics of the chair at its discretion. Examples of aesthetic changes may include but are not limited to such things as: color, size, girth, accessories, weight capacity, etc.
- PSM / 4Seasons will pay Renetto on Canopy Chair sold - except for the Winn Dixie and BJs orders, Winn Dixie is $2 / chair, BJs is $1.50/chair.
- The vendor of record for all Canopy Chairs sold will be PSM Group / 4Seasons and Renetto corp. is not liable for these Canopy Chairs sold.
- Four Seasons / PSM will not represent the Canopy Chair as a "Renetto" chair, it may however refer to the "Canopy Chair" as having the same technology as the Renetto chair and is in fact legally licensed from Renetto.
- Renetto has the right to sell the "Renetto" branded canopy chair at its discretion.
- Payment Schedule: 4Seasons / PSM agrees to pay Renetto royalties due for chairs sold by the 15th of the month for payments received on Canopy Chairs.
- PSM Group 4Seasons will not sell the "Canopy Chair" to the following retailers without authorization from Renetto:
  - Target
  - Home Depot
  - Sears/KMART
  - Walmart
  - Costco
  - Sams Club
  - Lowe's
  - HSN
  - QVC
  - Discovery Channel Store
  - .com exclusive deals (noted that individual retails may promote their "Canopy Chair" on their Web site)
- Renetto has a strong interest in selling the Renetto chair as an exclusive product. Renetto will have top essentialion at the sales meeting with QVC, chair as an exclusive product. Renetto will have top essentialion at the sales meeting with QVC.
- Whenever Renetto authorizes PSM/4Seasons to represent the "Renetto" branded chair to a retailer, Renetto will be represented at the meeting unless they decide to not be present.
- PSM is authorized to sell the "Canopy Chair" at its discretion per the above through the 2006 calendar year, All contracts signed in the 2006 calendar year are authorized to be fulfilled into 2007.
- Renetto, at its discretion in writing prior to 12/31/06, reserves to right to authorize PSM / 4Seasons to continue or discontinue selling the "Canopy Chair" in the 2007 calendar year.
- Renetto and PSM / 4Seasons, in good faith, agree to meet in person quarterly to review the partnership agreement. PSM agrees to help offset some of the cost of the travel for Renetto.
- All information distributed between Renetto and PSM Group shall remain confidential. Specifically, patent information shall not be disclosed by PSM Group.
- Early estimate for 2006 shipments and payments in the next 80-180 days is approximately 20 containers in the neighborhood of $570,000.
  - BJs - 7 containers
  - WD - 5 containers
  - PW - 2 containers

/4/2006

EXHIBIT
A

05/16/2007  12:48  18476621332          PRO SALES                    PAGE  02

o  C&S – 2 containers
o  Garden Ridge – 2 containers
o  Dillards – 2 containers
o  Note: The only POs in hand at this time are BJs, WD and C&S. The rest of the contracts are pending.

Case 1:07-cv-03951     Document 25     Filed 10/02/2007     Page 27 of 32

9/4/06

PSM Group , Inc.

cj/y/06

RENETO

/4/2006

05/16/2007  14:09    18476521332    PRO SALES    PAGE  01

*TO JIM HODSON*
*FROM HOWARD SHRALBERG*

Todd Shralberg    *PAGE II.    THIS IS THE CORRESPONDENCE AT THIS END.*

From:  Anthony Vittone [AVittone@swimways.com]
Sent:  Friday, May 04, 2007 2:40 PM
To:  hshralberg@psmgroupinc.com
Cc:  tshralberg@psmgroupinc.com; David Reeb; paul robinette
Subject:  RE: Renetto Car
Importance: High

Howard —

Thank you for speaking with me earlier today.

I wanted to confirm that Swimways has concluded its deal with Renetto on the Canopy Chair and acquired the intellectual property and exclusive, worldwide sales of the product. In deference to your work in representing the product this past year, we have agreed to allow PSM Group to continue to accept new orders through July 1, 2007. However, all open orders that exist now or will be written by July 1, must be shipped to the accounts no later than September 1, 2007. PSM Group should not accept any orders that cannot be fulfilled by September 1, 2007.

As we agreed, PSM Group will not show the Canopy Chair at the National Hardware Show or any other trade shows. If you have any questions for me, please feel free to contact me (757-918-6418).

Anthony Vittone    *AGREE.*
Vice President & General Counsel    *NOTHING IN WRITING FROM*
Swimways Corp.    *RENNETTO.*      *— I DID NOT*

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

5/16/2007


EXHIBIT
B

OBER|KALER
Attorneys at Law

Ober, Kaler, Grimes & Shriver
Attorneys at Law

120 East Baltimore Street
Baltimore, MD 21202-1643
410-685-1120/ Fax 410-547-0699
www.ober.com

Royal W. Craig
rwcraig@ober.com
410.347.7303

Offices in
Maryland
Washington DC
Virginia

June 1, 2007

By EMAIL tpyardley@arnstein.com
CERTIFIED MAIL CONF.

Thomas P. Yardley
Arnstein & Lehr LLP
120 South Riverside Plaza • Suite 1200
Chicago, Illinois 60606-3910

Re: PSM Group/Renetto

Dear Mr. Yardley:

We represent the Renetto company. Please direct all future correspondence in regard to this matter to our attention.

There is no implied partnership agreement, nor any division of profits or control necessary to support this interpretation. To the extent that an agreement existed, it was quite clearly a license agreement with fixed royalty payments per unit sale of the "Canopy Chair." Per the terms of the license, PSM was only authorized to accept purchase orders for the "Canopy Chair" through the 2006 calendar year. Renetto did not exercise its renewal option and the agreement is now terminated. In fact, Renetto has now sold the product line including the intellectual property to Swimways, and there was nothing express or implied to prevent this. Renetto hereby demands that PSM cease any and all efforts to market, sell or otherwise distribute the Canopy Chair immediately.

Please inform your client that termination is not a release of their payment obligations under the agreement as they existed. Renetto alleges that PSM has not fully accounted for their sales of Canopy Chairs sold, and has not paid the royalties that are due. Within seventeen (17) days from the date of this letter we request that you forward an accurate list of all purchase orders received to date naming the purchaser, quantity and type of purchased chairs, date of receipt, and payments received therefore with like details. Note that there is a strong sentiment that PSM has in the past under reported their sales, and Renetto has authorized us to take whatever action is necessary to pursue a full and honest reconciliation. Your cooperation per the foregoing will help to avoid legal action.

We ask that you confirm in writing that your client will cease all sales of the Canopy Chairs, and provide us with the requested reconciliation information by June 15, 2007. Otherwise we will assume that you have no intention to respond and will take appropriate action.

EXHIBIT
C

*Thomas P. Yardley*
*June 1, 2007*
*Page 2*

If you need additional information or would like to discuss the situation further, please contact me directly.

This letter is without prejudice to any and all other rights and claims that Renetto may have in this matter which are expressly reserved.

Case 1:07-cv-03951    Document 25    Filed 10/02/2007    Page 30 of 32

Sincerely,

Raye Craig

RWC/mc
Cc: Steve Tinto



5816 WARD COURT • VIRGINIA BEACH, VA 23455 • TEL. (757) 460-1156 • FAX (757) 464-9281

For Immediate Release

For further information, contact:
Monica Jones (757) 318-6412
mjones@swimways.com

# SwimWays® Acquires Breakthrough Chair Design

### *Leading Outdoor Recreational Company Assumes*
### *Ownership and Distribution for the Original Canopy Chair™*

(Virginia Beach, VA, June 7, 2007) — SwimWays Corporation announces today it has acquired ownership of the Original Canopy Chair from Renetto, a successful design and development company specializing in outdoor recreational products. The acquisition, announced at the 2007 SwimWays Sales & Marketing Meeting in Virginia Beach, gives SwimWays immediate ownership of the breakthrough technology, as well as distribution rights to the Original Canopy Chair.

Under Renetto, inventors of the best-selling Kelsyus™ Portable Hammock™, the patent pending Canopy Chair has been sold through select retail outlets and through the company's web site. According to SwimWays President David Arias, the Original Canopy Chair now will be offered globally as part of SwimWays' Kelsyus product line. SwimWays has also partnered with Renetto to develop additional outdoor furniture ideas for Kelsyus.

"The Renetto design team is second-to-none in terms of combining incredibly innovative product design with advanced engineering standards for the outdoor recreational category. This partnership is going to put Kelsyus in the hands, and on the backs and under the seats, of every man, woman and child who spend time outdoors," Arias said. "We look forward to bringing the amazingly innovative Original Canopy Chair and future product design ideas from Renetto to outdoor enthusiasts around the world."

Constructed of lightweight steel and heavy-duty polyester fabric, the Original Canopy Chair presents a unique seating solution for any outdoor activity. With one simple motion, the canopy lifts overhead to convert the familiar quad style chair to canopy seating. Folded down and closed, the canopy becomes the bag, and the two padded shoulder straps make the Canopy Chair hands-free and portable. A special feature of the Canopy Chair includes under-canopy, overhead utility pockets for storing items out of view.

**About Kelsyus**
Kelsyus is a line of hi-tech, high performance outdoor gear and furniture designed for adventure travelers, nature lovers, and outdoor event goers. The patented backpack chairs, hammocks and floats are engineered for hands-free portability and utilize materials suited for longevity outdoors. For further information, go to www.swimways.com and click on Kelsyus.



EXHIBIT
D



5816 WARD COURT • VIRGINIA BEACH, VA 23455 • TEL. (757) 460-1156 • FAX (757) 464-9261

**About SwimWays**
SwimWays Corporation, headquartered in Virginia Beach, Va., is a leading manufacturer of outdoor recreational products and holiday seasonal products. The company enjoys distribution in over 30,000 storefronts internationally, comprised of major international retail chains and specialty stores worldwide. SwimWays' most widely known brands include Spring Float®, Toypedo®, Rainbow Reef™, Kelsyus™, Safe T. Seal™ and Holiday Arts™. For further information, visit www.swimways.com.

**About Renetto**
Renetto is a product design and development company that combines innovative engineering and imaginative design to revolutionize industries. Over the past decade, the Renetto team of Dave Reeb, Paul Robinett, and Steve Tinto has conceived, designed, developed and distributed products around the world. For further information about Renetto, check out www.renetto.com.

© 2007 SwimWays Corp. All rights reserved.