1

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
RENETTO, LLC,                     )
                                  )
                                  )
            Plaintiff,            )   Civil No. 07-789
                                  )
    VS.                           )   November 2, 2007
                                  )
PROFESSIONAL SALES AND MARKETING  )
GROUP, LLC,                       )
            Defendant.            )
_____    )
```

REPORTER'S TRANSCRIPT

MOTIONS HEARING

BEFORE:        THE HONORABLE GERALD BRUCE LEE
               UNITED STATES DISTRICT JUDGE

APPEARANCES:

  FOR THE PLAINTIFF: OBER KALE GRIMES & SHRIVER
                     BY: ANTHONY VITTORIA, ESQ.

  FOR THE DEFENDANT: POLSINELLI SHALTON WELTE SUELHAUS
                     BY: WILLIAM BLAKELY, ESQ.

                        - - -

OFFICIAL COURT REPORTER: RENECIA A. SMITH-WILSON,RMR,CRR
                         U.S. District Court
                         401 Courthouse Square, 5th Floor
                         Alexandria, VA  22314

**Exhibit 02**

2

INDEX

ARGUMENT BY THE DEFENDANT    3,   18

ARGUMENT BY THE PLAINTIFF    12

RULING BY THE COURT          21

---

1          (Thereupon, the following was heard in open

2     court at 12:02 p.m.)

3          THE CLERK:  Civil action 07-789, Renetto

4     versus Professional Sales and Marketing Group.

5          MR. VITTORIA:  Good afternoon, Your Honor.

6     Anthony Vittoria on behalf of Renetto, LLC.

7          THE COURT:  Good afternoon.

8          MR. BLAKELY:  Good afternoon, Your Honor.

9     William Blakely on behalf of Professional Sales and

10    Marketing.

11         THE COURT:  Good afternoon.

12         I'm ready.

13         MR. BLAKELY:  Yes, thank you, Your Honor.

14    May it please the Court, the issue here today is whether

15    or not the First Filed Doctrine should be applied and this

16    case be dismissed and/or transferred back to the Northern

17    District of Illinois where the same claims that are before

18    this Court are already being litigated.

19         And the second issue and related issue is

20    whether or not there's personal jurisdiction over this

21    defendant, Professional Sales.  And we submit, Your Honor,

22    that the answer is no.  No, because one, they're not

23    sufficient minimum contacts.  And two, that in order for

24    there to be personal jurisdiction this case that would be

25    in violation of due process because there was no

1    purposeful intention to do anything in the Commonwealth of

2    Virginia by this defendant.

3                    And, I would like to first address the issue

4    of the First Filed Doctrine, Your Honor.  This case was

5    initially filed by the defendant, and I'll just refer to

6    it as Professional Sales and PSM.  They filed in Cook

7    County in Illinois.

8                    Now that case was removed and I believe

9    properly removed by Renetto to Northern District of

10   Illinois.  That occurred, the removal date, I have that

11   here.

12                   THE COURT:  Well, that's when it gets

13   interesting.  And I'm trying to figure out what was the

14   status of the case at the time the Virginia suit was

15   filed.  Hadn't the judge in Illinois dismiss the case?

16                   MR. BLAKELY:  Well, what he did, first it

17   was removed and then sua sponte he entered an order that

18   did a number of things.  We've attached that order here in

19   our pleading.

20                   And the Court ordered the parties, one, to

21   exhaust settlement of possibilities; two, to file a joint

22   status report by August 20th; and then three, he entered a

23   conditional dismissal order by noting that the state court

24   complaint is dismissed without prejudice to the filing of

25   an appropriate amended federal complaint.

1    THE COURT:  So, it was dismissed, huh?

2    MR. BLAKELY:  Well, it was conditionally

3    dismissed, Your Honor.  What happened it was just --

4    THE COURT:  Conditionally pregnant?  It was

5    either dismissed or wasn't, wasn't it?  It was dismissed,

6    right?

7    MR. BLAKELY:  I'm just saying there was a

8    continuing existence of jurisdiction by that court.  The

9    parties had to, one, engage in settlement.  They had to

10    file papers with the court.  And --

11    THE COURT:  They could have walked away,

12    couldn't they?

13    MR. BLAKELY:  I'm sorry.

14    THE COURT:  The plaintiff could have walked

15    away, couldn't they?  They didn't have to refile.

16    MR. BLAKELY:  In this case, I don't believe

17    they could have, Your Honor.  I believe they would have

18    had to report back to the court.

19    There was a court -- they had to file

20    actually a joint status report by order of court of

21    eight -- and it was to be returned on 8-20.

22    I mean, I don't believe -- and by the way,

23    Your Honor, they entered then.  They filed a motion to

24    amend the complaint.  It was not a new complaint that was

25    filed, not a new number order.  They filed an amended

1    complaint because this Court continued to have

2    jurisdiction over the parties.

3             And what happened is that as soon as --

4    apparently Renetto believed that there was not going to be

5    a settlement.  He raced up to Virginia and filed a

6    complaint here.  And now that we have this Northern

7    District of Illinois, there's been an amended complaint

8    filed, then an answer filed.  They have set down a

9    discovery schedule, and I believe discovery ends on

10   April 30th.

11            So, we have that, you know, sort of unusual

12   situation where there was a -- what I refer to -- my

13   words, Your Honor, not in the order -- but conditional

14   dismissal.  But the Court didn't just dismiss the case

15   because they ordered the parties to do a number of things

16   and report back to the Court and to make Court filings.

17            So, to respond to your point, Your Honor, I

18   don't believe they could have just walked away without at

19   least being in violation of the Court.

20            And I want to add one other things that's

21   important.  The Court ordered -- and I believe this is a

22   quote, the Court ordered the parties to quote, "exhaust

23   all settlement possibilities before any pleadings are

24   filed".

25            So, what happened is they were caught in the

1    unique position of not being able to amend the complaint

2    which is really what they were trying to do because they

3    had a state court complaint and they would have to make it

4    compliant with the federal rules.

5            But the Court ordered them not to -- not to

6    file any pleading until they had exhausted settlement.

7    Then they had to report to the Court on that settlement

8    and then they had to file a joint status report by

9    August 20th.

10            And before that on I believe it was

11   August 9th, Renetto, after having had some settlement

12   discussions -- that wasn't there.  I don't know, but had

13   settlement discussions.  They declared settlement

14   apparently over and filed this complaint in this court.

15            THE COURT:  All right.  Well, so I

16   understand it, to be clear, your argument about first file

17   is the case started in Illinois and is still going in

18   Illinois and ought to go to Illinois.

19            MR. BLAKELY:  That's true.

20            THE COURT:  I understand that argument.

21            MR. BLAKELY:  And secondly, the other point

22   I'd like to make, Your Honor, is the personal jurisdiction

23   argument.

24            Number one, there was nothing that was

25   directed by the defendant in this case into the

8

1    Commonwealth of Virginia except I believe that there were

2    initially one and I think perhaps two follow-up phone

3    calls that were made at the suggestion of Renetto to call

4    another party Swimways and by the way, Swimways is a party

5    that is in the litigation in Illinois as a -- as a

6    co-defendant with Renetto.

7            And so there was nothing -- this case

8    involves, Your Honor, these Canopy Chairs.  I don't mean

9    to go into the facts too much because I don't know that

10    it's that pertinent.

11            But the point is that our client actually

12    helped market these Canopy Chairs that were designed by

13    Renetto.

14            THE COURT:  So your job was to sell the

15    Canopy Chairs?

16            MR. BLAKELY:  That's exactly correct.

17            THE COURT:  And, did you sell the Canopy

18    Chairs to Target and to companies that do business in

19    Virginia?

20            MR. BLAKELY:  What happened was, Your Honor,

21    there were agreements to sell those products.  They went

22    to various companies, but nothing -- they indicated in

23    their brief that they were Virginia distributors.  That is

24    not correct.  What they were, they were national chains.

25    Apparently they have some distribution points in this

1    Commonwealth.  But, there was nothing that was purposely

2    directed as the citations refer to.

3              THE COURT:  Well, help me with that.  I

4    understand what purposeful availment means and I think you

5    do too.  But my question is in today's global economy, a

6    company that manufacturers Canopy Chairs does not want to

7    just sell them in Illinois because there are not that many

8    beaches in Illinois.  You want to sell them in Virginia

9    Beach and North Carolina and South Carolina as well.  Is

10   that right?

11             MR. BLAKELY:  Your Honor, what they did is

12   they sold them to I believe --

13             THE COURT:  No, my question was very

14   precise.  You're a national -- you're selling a product

15   that you want to market in Virginia, North Carolina, South

16   Carolina and Florida, any place that has a beach, right?

17   It's a Canopy Chair, right?

18             MR. BLAKELY:  I think that was up to the

19   party we sold them to.

20             THE COURT:  No, no.  Come on.  Come on.

21   Come on.  If you sell it to Walmart or you sell it to

22   Target and you know the Target is in Virginia, you want to

23   sell chairs, right?  And you earn a fee when chairs are

24   sold to that national chain, don't you?

25             MR. BLAKELY:  You want to sell chairs to

1    that chain, but there is not --

2                THE COURT:  So, then like International Shoe

3    then when you put these chairs into commerce in Virginia,

4    you're doing business here, aren't you?

5                MR. BLAKELY:  Yes, but you refer to --

6                THE COURT:  Is that yes or no?  You didn't

7    answer that question.  Did you answer yes?

8                MR. BLAKELY:  Better ask me the question

9    again, Your Honor.

10                THE COURT:  My question was if you put into

11    the stream of commerce these chairs to -- I don't want to

12    use the Walmart.  Let's say Target.  And Target is in the

13    Eastern District of Virginia and you know those chairs are

14    going to be sold here, is that purposeful availment for

15    purposes of the Long-arm Statute?

16                MR. BLAKELY:  I don't believe it is, Your

17    Honor.

18                THE COURT:  Why not?

19                MR. BLAKELY:  I think you have to have an

20    intent to direct it into the Commonwealth.  There was a

21    case, the case involving the tire and the inner tube

22    tires.  I believe it was --

23                THE COURT:  Kumho Tires?

24                MR. BLAKELY:  And there, yes, tires are

25    distributed to various districts, various states.  But you

1    have to have a purposeful intent to direct your activities

2    into the Commonwealth.

3            In this particular case, there was no

4    contact with the Commonwealth except for I believe there

5    were three phone calls to Swimways.

6            It is apparently true that I believe Sears

7    and a couple of other of these groups that were

8    distributors have -- have distributed some of these -- of

9    Canopy Chairs into the Commonwealth.  But that was not

10   Professional Sales that did that.  They weren't directing

11   them into the Commonwealth and I believe that's what's

12   required, Your Honor.

13            THE COURT:  Okay.

14            MR. BLAKELY:  So, in summary, I'll just

15   conclude that there are really three reasons.  One,

16   there's a very active case right now pending in the

17   Northern District of Illinois.

18            Your Honor, I want to also note that the

19   answer that was filed there I believe that what we have in

20   this case is a mandatory counterclaim in Northern District

21   of Illinois.  And in this particular case, the claims that

22   have been asserted by Renetto, the response, if there's

23   going to be one through an answer by Professional Sales,

24   will mandate that we will have to file a mandatory

25   counterclaim back against -- or compulsive counterclaim

1    back against the plaintiff, and it will be the same basic

2    lawsuit that we have in the Northern District of Illinois.

3              It is a clear -- I believe the jurisdiction

4    clearly was asserted by the defendant in this action,

5    Professional Sales, as a plaintiff in the Northern

6    District of Illinois.  That's where I submit the proper

7    jurisdiction for this case is, and I request the Court

8    honorably to please transfer the case back to Illinois or

9    dismiss it.  Thank you.

10             THE COURT:  Thank you.

11             MR. VITTORIA:  Good afternoon, Your Honor.

12   Anthony Vittoria on behalf of plaintiff, Renetto.

13             THE COURT:  Good afternoon.

14             MR. VITTORIA:  I think the Court's hit the

15   head about the conditionally or partially pregnant or

16   partially dismissed.

17             In fact, I think the defendant has gone a

18   great way in mischaracterizing the line order of the

19   federal court in Illinois.  It wasn't an order.  It was

20   just a statement.  There was nothing that the parties had

21   to do.

22             This suit is dismissed without prejudice to

23   the filing of an appropriate amended federal complaint or

24   timely motion to remand.

25             The plaintiff in that case, PSM, had the

1    option of filing an amended complaint or filing a motion

2    to remand.

3                    The parties are also requested, not ordered,

4    requested to fully exhaust all settlement possibilities

5    for this dispute prior to filing any further pleadings.

6    They're requested.  They were not ordered.

7                    We were not ordered to go to settlement

8    negotiations.  If PSM wanted to file an amended complaint,

9    if they wanted to file a motion to remand, we were

10   requested to go to settlement negotiations.  We were not

11   ordered.  And the parties were then to file a joint status

12   report by August 20, 2007.

13                    I submit, Your Honor, the Court isn't going

14   to track down PSM and sanction them for failing to file a

15   status report for this case that's already been dismissed.

16                    And as further evidence that the case was

17   dismissed, Your Honor, I have here the electronic filing

18   receipts that you get for filing electronic documents.  I

19   printed out a couple of them.

20                    PSM's counsel filed a couple of attorney

21   appearances in the case on August 17th of 2007.  One for

22   Carina Segalini, another for Anthony Nasharr and it

23   provides the name of the case, the case number, file of

24   Professional Sales and Marketing Group, Inc.  And

25   underneath it in bold all caps, warning, colon, case

1   closed on 10-17-2007.

2              This case was closed, Your Honor.  It was

3   not active.  There was no promise this case was going to

4   be revived by PSM.

5              Accordingly, Renetto had its own claims.  It

6   is really based in Columbia, Maryland.  A lot of its

7   critical witnesses are located here in the Eastern

8   District of Virginia.  It's a very convenient forum.  It's

9   a very quick forum, Your Honor.  Our witnesses are here.

10  They're subject to subpoena here, so we filed in the

11  Eastern District of Virginia to have our case, our claims

12  adjudicated.

13             So, accordingly, Your Honor --

14             THE COURT:  Well, is there personal

15  jurisdiction here?  Counsel says that the company does not

16  do business here, does not sell here.  It may have sold to

17  national chains, but didn't intend to sell in Virginia.

18             MR. VITTORIA:  Your Honor, I would

19  respectfully disagree.  My understanding of large chains

20  such as Target and Walmart, their national offices are --

21  in the case of Target is in Minnesota.  The national chain

22  for Walmart is in Arkansas.

23             All the products that are sold in the

24  Walmart are not all delivered to Arkansas and then

25  Arkansas deliveries them to all the thousands of different

1    Walmarts.

2              What happens is the particular companies

3    that are wanting to sell through Walmart actually deliver

4    the chairs to the individual locations or whatever the

5    product is, they deliver it to the Walmart in

6    Frederiksberg, Virginia.  They deliver to the Walmart in

7    Woodbridge, Virginia.  They don't deliver to Arkansas and

8    then Walmart delivers it out.

9              So for those chairs to get into Virginia,

10   it's my understanding that would have to have been

11   delivered by PSM or its manufacturer or somebody on their

12   behalf into this district.

13             So, of course, they were trying to sell

14   chairs here.  They might not have thought in Illinois

15   Virginia is our market.  We need to go there.  We want to

16   sell chairs there.  They wanted to sell as the Court

17   correctly pointed out anywhere where they could get a

18   market, and one of those places was in the Eastern

19   District of Virginia because of Virginia Beach, because

20   Ocean City, Maryland is close by, because Nags Head is

21   close by.  Because there are ball fields everywhere where

22   people would like to sit in chairs that are in shade.

23             So of course, they directed their attention

24   here.

25             THE COURT:  But if this chair collapsed on a

1   person sitting in Virginia Beach, they wouldn't be able to

2   bring a lawsuit against PSM because PSM does not do

3   business in Virginia?

4                  MR. VITTORIA:  I believe they would be able

5   to bring a lawsuit against PSM, Your Honor.

6                  But, I also -- I also wanted to point out

7   that we have a tort claim.  We have a tort claim about the

8   intentional interference with business relations and that

9   is related to this phone call made by PSM's officer to

10  Swimways which is located in Richmond, Virginia.

11                 And that, Your Honor, that's a tort here.

12  So that's an independent separate grounds for jurisdiction

13  in this court.

14                 Now, PSM relies heavily on the New

15  Wellington case.  Well, the New Wellington case is

16  inapposite here, Your Honor.

17                 That is a case there wasn't even a tort

18  claim alleged.  The only grounds that the plaintiff in

19  that case alleged personal jurisdiction was on -- there

20  was a contract claim.  But in the argument at the motion

21  to dismiss, the plaintiff said, well, listen, Your Honor,

22  we have a tort claim, and that's another basis for

23  jurisdiction.  But, there was no actual tort claim in the

24  complaint.

25                 Here we have a tort claim in the complaint.

1       And so, it's been alleged and if -- I think what PSM is

2    really doing is focusing a lot on paragraph four of

3    Renetto's complaint which is the paragraph on

4    jurisdiction.

5               If it pleases the Court, we'll amend that to

6    add an additional statement that jurisdiction is founded

7    in this court based on this tort that occurred in this

8    Commonwealth.

9               But ultimately, that's exalting form over

10   substance, Your Honor.  We have a tort that occurred in

11   this jurisdiction in this district.  And we also have PSM

12   conducting business in this jurisdiction.

13              So, I don't think that there's any question

14   there's personal jurisdiction here, Your Honor.

15              THE COURT:  And you think there's personal

16   jurisdiction because they're transacting business in

17   Virginia by selling the chairs here?

18              MR. VITTORIA:  I believe that is one ground.

19   I also believe the --

20              THE COURT:  And also the tort grounds in

21   terms of Swimways -- the phone call to Swimways' counsel?

22              MR. VITTORIA:  Yes, Your Honor.

23              THE COURT:  All right.  I think understand

24   your position.

25              MR. VITTORIA:  Thank you, Your Honor.

1           MR. BLAKELY:  Can I just have a brief

2    moment, Your Honor?

3           THE COURT:  Absolutely.

4           MR. BLAKELY:  The first point I'd just like

5    to read from the order.  It is attachment B, Your Honor,

6    to our reply brief.  And the order reads after careful

7    view of the recently removed state court complaint, said

8    complaint, quote, "is dismissed without prejudice to the

9    filing of an appropriate amended federal complaint or a

10   timely motion to remand".

11          And then the judge or the entry continues:

12   "The parties to file a joint status report by 8-20-2007."

13   And that's of course following this discussion that they

14   have to exhaust settlement discussions before they file

15   any amended complaint.

16          So, my point is, Your Honor, and I really do

17   dispute opposing counsel.  I believe the parties were

18   obligated to file a status report by the order of that

19   Judge, Judge Cast -- Castillo, excuse me, on August 20,

20   2007.

21          This case was not just summarily dismissed

22   without prejudice and without any further action of the

23   parties.  The Court thereby retained jurisdiction over

24   this case, over the actions of the parties and requiring

25   them to respond back to the Northern District of Illinois.

1          The second point I'd like to quote from the

2     Eastern District of Virginia case in the Affinity matter

3     that we cited in our brief.  And, there referring to the

4     due process requirement, Your Honor.  And it requires the

5     contract must have a substantial connection with the forum

6     state.

7          And in addressing the point that we have

8     discussed here today which is the purposeful direction of

9     activities of the court in this case noted that one, in

10    this case -- in the case that's being cited, the contract

11    was finalized in that case in Alaska.  Our case was

12    finalized in I believe it was Illinois and there were

13    discussions overseas that the certain terms were

14    negotiated by telephone between Virginia and Alaska.  That

15    didn't happen.  There was no contact by telephone other

16    than the contact with this potential third party defendant

17    Swimways.

18         The defendant, and this is what I believe is

19    important, the defendant made no purposeful effort of its

20    own to develop a market in Virginia.

21         And that is what I'm saying in this

22    particular case, Your Honor.  And I'll conclude that the

23    defendant in this case did not make any purposeful effort

24    to develop anything into Virginia.  Yes, they did enter

25    into a sales agreement with --

1       THE COURT:  So, if a Canopy Chair collapsed

2   on a person at Virginia Beach, they could not bring a

3   claim against PSM.  Is that right?

4       MR. BLAKELY:  I believe that would be right,

5   Your Honor.  I believe there would be a challenge to that.

6   That's correct.

7       THE COURT:  So in your view, the consumer

8   injured when a Canopy Chair collapsed in Virginia Beach

9   could not bring a claim against PSM because PSM is not

10  doing business in Virginia under the Long-arm Statute.  Is

11  that right?

12      MR. BLAKELY:  Well, in this particular case,

13  Your Honor --

14      THE COURT:  My question is very precise.

15  Could you answer my question.

16      MR. BLAKELY:  I think the answer to that is

17  yes.

18      THE COURT:  That they could?

19      MR. BLAKELY:  I think they could not.

20      THE COURT:  Okay.

21      MR. BLAKELY:  I think they would have to

22  challenge that.  Yes, that's correct.

23      THE COURT:  Okay.  Thank you.

24      This matter is before the Court on the

25  defendant's motion to dismiss for lack of personal

1    jurisdiction and for transfer of venue.  And this is a

2    case involving claims brought by Renetto, a Maryland

3    company, alleged inventor of the chair that plan to sell

4    with Swimways, a Virginia corporation, I guess a marketing

5    company which was intending to purchase the right to

6    market the chair and PSM, Professional Sales and Marketing

7    Group.

8               And my reading of the papers suggest that

9    PSM engages in marketing of products and that their goal

10   was to sell this chair and that's what one of the

11   agreements attached demonstrates.

12              And the agreement itself that's been

13   provided, at least in this meeting footnote talks about

14   PSM is authorized to sell the Canopy Chair at its

15   discretion through 2006 calendar year.  And it also refers

16   to "will not sell to certain retail without

17   authorization", but there's some indication that the chair

18   has been sold to national retailers, including Target.

19              The legal question is whether there is

20   personal jurisdiction over PSM in Virginia.  And in my

21   view, there is personal jurisdiction because PSM is

22   transacting business in Virginia by distributing the

23   Canopy Chairs for sale in national and regional retail

24   chain locations in Virginia and has sufficient contacts

25   with Virginia to satisfy due process.

1        I recognize that the case was filed in

2   Illinois first.  However, it appears to me at the time

3   this lawsuit was filed, the Illinois case had been

4   dismissed.

5        The Virginia Long-arm Statute 8.01328.1(a)

6   encompasses anyone who acts directly or by agent as to a

7   cause of action arising from a person's transacting

8   business in this Commonwealth.  That's (a)1.

9        And the statute is sufficient to encompass

10  even a single act -- transaction under the English and

11  Smith case.

12       I don't think it's a close call.  And again,

13  there's certainly maybe another reading of it.  But the

14  cases that I've read suggest that here where you have

15  multiple sales transactions of these chairs through

16  Virginia stores, based upon the contract entered into by

17  PSM with the national retailer that that fulfills the

18  requirements of Virginia Long-arm Statute and I'll cite

19  Anita's New Mexico Style Mexican Food case from the Fourth

20  Circuit in 2000.  And also I'll cite the case of LG

21  Electronics and Beverly Hills Fan.

22       All these seem to me to suggest that where

23  you have this national chain, you have this product being

24  sold nationally, and it's here in Virginia that it is

25  sufficient for purposes of demonstrating a transacting

1    business to meet the requirements of the Long-arm Statute.

2                    And I also think that if the answer to the

3    question is that a consumer who is on Virginia Beach and

4    this chair collapses on her cannot bring a lawsuit against

5    the company that sold the chair through Target that she

6    purchased in the Target store in Virginia, if that doesn't

7    fall within the Long-arm Statute, then we have a real

8    problem.

9                    So for those reasons, I think that the

10   motion to dismiss for lack of personal jurisdiction will

11   be denied.  And I'm going to deny the motion to transfer

12   venue because the defendant did not make any showing of

13   what witnesses or proof was in Illinois.

14                   He says that there is, but there was no

15   affidavit setting forth any information about which

16   documents are in the Northern District of Illinois, what

17   witnesses are there.  And in the absence of some evidence

18   to support that, there is no basis here under 1404 to

19   change venue.  So motion to change venue is denied.

20                   Thank you.

21                   MR. BLAKELY:  Thank you, Your Honor.

22                   MR. VITTORIA:  Thank you, Your Honor.

23                   (Proceedings concluded at 12:26 p.m.)

24

25

CERTIFICATE OF REPORTER

        I, Renecia Wilson, an official court reporter for the United State District Court of Virginia, Alexandria Division, do hereby certify that I reported by machine shorthand, in my official capacity, the proceedings had upon the motions in the case of Renetto vs. Professional Sales.

        I further certify that I was authorized and did report by stenotype the proceedings and evidence in said motions, and that the foregoing pages, numbered 1 to 23, inclusive, constitute the official transcript of said proceedings as taken from my shorthand notes.

        IN WITNESS WHEREOF, I have hereto subscribed my name this 19th day of November 2007.


        _____
        *Renecia Wilson, RMR, CRR*
        *Official Court Reporter*