UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

FILED

2007 NOV -9 P 3: 01

| | |
|---|---|
| **RENETTO, LLC,** <br> a Maryland limited liability company <br> 9616 Hastings Drive <br> Columbia, Md 21046 <br><br> **Plaintiff,** <br><br> v. <br><br> **PROFESSIONAL SALES AND** <br> **MARKETING GROUP, INC.,** <br> an Illinois corporation <br> 3312 Commercial Ave <br> Northbrook, IL 60062-1909 <br><br> Defendant. | * <br> * <br> * <br> * <br> * <br> * Case No.: 1:07CV989-GBL/TCB <br> * <br> * <br> * <br> * <br> * |

* * * * * * * * * * * * * *

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Renetto, LLC, by its undersigned attorneys, hereby brings the following Complaint for monetary damages against Defendant Professional Sales and Marketing Group, Inc. and in support thereof alleges as follows:

### I.   PARTIES

1. Plaintiff Renetto, LLC ("Renetto") is and was at all times pertinent hereto a limited liability company organized under the laws of the State of Maryland. The members of Renetto are as follows: (1) Paul Robinette, a citizen of the state of Ohio; (2) David Reeb, a citizen of the state of Maryland; and (3) Steve Tinto, a citizen of the state of Arizona. Renetto is in the business of inventing, designing, developing, advertising, and selling consumer lifestyle products.

2.  Defendant Professional Sales and Marketing Group, Inc. ("PSM") is and at all times mentioned was a limited liability company organized under the laws of the State of Illinois. Howard Schraiberg is the chief executive officer (CEO) and sole shareholder of PSM. PSM is in the business of manufacturing and distributing outdoor furniture.

## II.   JURISDICTION AND VENUE

3.  The jurisdiction of this court over the subject matter of this action is predicated on 28 U.S.C. § 1332 in that plaintiff and defendants are residents of different states and the amount in controversy exceeds $100,000.

4.  This Court has personal jurisdiction over PSM as PSM conducts business in the Commonwealth of Virginia and derives substantial derives financial benefit from its business dealings within the state.

5.  Venue is proper in the Eastern District of Virginia because a substantial part of the wrongs alleged herein were perpetrated in said District.

## III.   FACTS COMMON TO ALL CLAIMS FOR RELIEF

A.  **The Canopy Chair**

6.  Renetto invented, designed, and developed the Renetto Canopy Chair ("Canopy Chair"), which is a folding chair including an overhead canopy to block the sun from the person sitting in the chair.

7.  Renetto applied for a patent for the Canopy Chair. (*See* Exhibit A: U.S. Patent Application No. 20070040422 by Reed et al. for "Canopy Chair" filed on July 12, 2006).

8.  Renetto advertises and sells the Canopy Chair on two websites that it operates (http://www.canopychair.com and www.renetto.com).

9. Renetto has solely developed other related chairs including: (1) the Kids Canopy Chair; (2) the Beach Canopy Chair; (3) the Aluminum Canopy Chair; and (4) the Soft Top Canopy Chair ("Related Chairs").

10. Renetto expended substantial time, money, and effort in designing and developing the Canopy Chair and Related Chairs.

**B.   The Verbal Distributorship Agreement**

11. In mid-2005, Renetto and PSM entered into a verbal distributorship agreement, whereby PSM would manufacture and distribute the Canopy Chair for Renetto and in turn PSM would receive fixed royalty payments per unit of Canopy Chair sold.

12. The verbal distributorship agreement required *inter alia* for PSM to (a) timely pay royalties to Renetto for sales of the Canopy Chair, (b) provide accounting reports for sales of the Canopy Chair, (c) refrain from selling to specific third parties (including Target Corporation and Kmart Corporation), and (d) maintain confidentiality of Renetto's proprietary information.

13. PSM has violated the verbal distributorship agreement. Specifically, upon information and belief, PSM significantly underreported sales of the Canopy Chair. In addition, PSM did not provide accounting reports for sales of the Canopy Chair and it approached Target Corporation and Kmart Corporation in conjunction with the sale of the Canopy Chair.

14. In response, Renetto attempted to contact PSM via telephone to restore business relations, but their efforts were unsuccessful.

15. Accordingly, on or about March 2006, Renetto informed PSM that it would no longer utilize PSM as a distributor of the Canopy Chair or Related Chairs (the "First Termination").

### C. The Memorialized Distributorship Agreement

16. The First Termination did not result in a parting of ways, but rather led to further discussions. Renetto, in good faith, presented the issues that it had with PSM which caused the first termination. Specifically, Paul Robinette met with Howard Schraiberg in April 2006.

17. As a result of the discussion, Renetto afforded PSM a second limited opportunity to correct its previous wrongdoing, and continue servicing Renetto as a distributor until December 31, 2006. Renetto and PSM memorialized the terms of this agreement in an e-mail. (*See* Exhibit B).

18. Pursuant to the memorialized agreement, Renetto expressly reserved the right to allow PSM to continue or discontinue selling the Canopy Chair in 2007. Renetto also retained the right to sell the Canopy Chair directly to the public through its own website and otherwise.

19. The written agreement also specified, *inter alia*, that PSM was to (a) pay, in a timely fashion, royalties to Renetto for sales of the Canopy Chair, (b) provide accounting reports for sales of the Canopy Chair, (c) refrain from selling to certain third parties, (d) include Renetto at sales meetings, and (e) maintain confidentiality of Renetto's proprietary information. (*See* Exhibit B.)

20. PSM again failed to fulfill its obligations that were made abundantly clear in the email distributorship agreement. Specifically, and despite the express wording of the agreement, PSM failed to timely pay royalties or provide accounting reports for sales of the Canopy Chair. In addition, PSM scheduled marketing meetings without giving Renetto the opportunity to participate or be present at them.

21.     In January 2007, Renetto again voiced its concerns but afforded PSM yet another opportunity to fulfill its obligations under the agreement, this time on a month-to-month basis. PSM still continued to be derelict in fulfilling its obligations.

### D. Renetto's Termination of the Distributorship Agreement and PSM's Tortious Retaliation

22.     In April 2007, Paul Robinette, on behalf of Renetto, informed PSM that the distributorship agreement was terminated and that PSM was to cease making sales of the Canopy Chair.

23.     Renetto also informed PSM that Renetto intended to allow Swimways Corporation ("Swimways") to distribute the Canopy Chair and Related Chairs. Swimways is a Virginia Beach, Virginia based company in the business of producing, marketing, and selling pool toys and other outdoor products.

24.     By the end of the first quarter of 2007, Renetto began negotiating with Swimways to serve as distributor of the Canopy Chair. Renetto also began negotiating the sale of the intellectual property rights to the Canopy Chair.

25.     Upon information and belief, when PSM became aware that Renetto was negotiating with Swimways, PSM attempted to interfere with Renetto's negotiation and stop the sale of the Canopy Chair and Related Chairs to Swimways.

26.     Specifically, upon information and belief, PSM's Schraiberg called Swimways' Vice President and General Counsel, Anthony Vittone and told Vittone that Renetto's product was inferior, shoddy, and not worth licensing. Schraiberg also told Vittone that Renetto had licensed the Canopy Chair and Related Chairs to PSM and that Renetto did not have the authority to license the Canopy Chair and Related Chairs to Swimways.

27. In addition, upon information and belief, PSM continued making sales of the Canopy Chair after Renetto expressly instructed it to stop, and still continues.

## COUNT ONE
### (Breach of Contract)

28. The allegations of Paragraphs 1-27 above are incorporated by reference as if fully set forth herein.

29. Both versions– the verbal and the memorialized – of the distributorship agreement between Renetto and PSM was a valid and binding contract between the parties.

30. PSM has breached the distributorship agreement in several ways, including

   a. By approaching retailers including Target Corporation and Kmart Corporation without Renetto's authorization;

   b. By utilizing factories unauthorized by Renetto to manufacture the Canopy Chair and Related Chairs;

   c. By failing to maintain confidentiality of Renetto's proprietary information;

   d. By failing to provide full accounting reports for sales of the Canopy Chair and Related Chairs;

   e. By failing to pay Renetto royalties that are due; and

   f. By continuing to market, sell, and otherwise distribute the Canopy Chair and Related Chairs without authorization.

31. Renetto performed all of its duties under the distributorship agreement and at no time was in breach thereof. In addition, all conditions precedent to maintaining that action have been performed by Renetto and Renetto is otherwise in full compliance with the distributorship agreement.

6

32. As a direct and proximate result of the defendants' breach of contract, Renetto suffered, and will continue to suffer, immediate, irreparable and considerable damages totalling more than $100,000.

## COUNT TWO
### (Breach of Fiduciary Duty)

33. Renetto re-alleges and incorporates herein by reference Paragraphs 1 through 32 above.

34. At all relevant times, PSM was acting as Renetto's distributor in the marketplace, such that there was a relationship of trust and confidentiality between PSM and Renetto.

35. PSM has breached its fiduciary duty and duty of confidentiality by disclosing confidential information to Swimways, a third party whom Renetto was negotiating with.

36. PSM breached its underlying fiduciary duty to Renetto by performing the distributorship agreement in bad faith.

37. PSM's actions are, and were, intentional, willful and malicious.

38. Renetto has suffered, and will continue to suffer, irreparable injury and loss exceeding $100,000 as a result of PSM's intentional and malicious breach of fiduciary duty and duty of confidentiality.

## COUNT THREE
### (Tortious Interference with Prospective Advantage)

39. The allegations of Paragraphs 1-38 above are incorporated by reference as if fully set forth herein.

40. The defendants knew that Renetto was in negotiations with Swimways for the Canopy Chair and Related Chairs, and willfully and maliciously interfered with said negotiations.

41.　Despite this knowledge, the defendants, without legal justification, intentionally and improperly interfered with Renetto's rights by disclosing confidential information to Swimways.

42.　The defendants intentionally, and with improper motive to injure Renetto, untruthfully and unlawfully degraded the Canopy Chair and Related Chairs in effort to stop Renetto's sale of said Chairs to Swimways, without the knowledge of Renetto.

43.　The negotiations between Swimways and Renetto regarding the Canopy and Related Chairs provided a clear, significant, and exclusive prospect of future economic advantage for the holder.

44.　Renetto suffered from the untruthful discourse regarding said Chairs to Swimways. The tarnished negotiations between Renetto and Swimways resulted in Renetto's decreasing bargaining power and a reduced licensing fee from Swimways.

45.　As a result of the defendants' past, and ongoing tortious conduct, Renetto has suffered, and will continue to suffer, irreparable injury and loss exceeding $100,000.

## COUNT FOUR
### (Misappropriation of Products)

46.　The allegations of Paragraphs 1-45 above are incorporated by reference as if fully set forth herein.

47.　Without the consent or approval of Renetto, PSM has wrongfully misappropriated, sold and/or distributed product designs that had been acquired from Renetto as the result of Renetto's significant expenditure of labor, skill, and money. Without authorization PSM is appropriating said designs and are selling them as their own. PSM is at a special

advantage in the competition because it has not been burdened with any of the development expense as Renetto has.

48. PSM's unauthorized Canopy Chair and Related Chairs are of inferior quality to Renetto's Canopy Chair and Related Chairs and, consequently, said chairs are breaking apart leaving customers dissatisfied. Customers have complained to Renetto regarding the low quality chairs that they have bought from PSM.

49. PSM's unauthorized Canopy Chair and Related Chairs are being manufactured and sold at artificially low prices, prompting Renetto's direct customers to demand like prices and eroding Renetto's profit margin.

50. As a result of PSM's misappropriating Renetto's proprietary information (as covered by US Patent Application No. 20070040422 by Reed et al. for "Canopy Chair" filed on July 12, 2006), Renetto has suffered, and continues to suffer, severe economic injury, including tarnished reputation, lost sales, profits and other compensatory damages totaling more than one hundred thousand dollars ($100,000).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief as follows:

51. That a permanent injunction issue out of this Court restraining Defendants, and their officers, agents, servants, employees, customers, and assignees from directly or indirectly making or causing to be made, selling or causing to be sold, or distributing or causing to be distributed any Canopy Chairs or Related Chairs or otherwise directly misappropriating Plaintiff's product.

52. That this Court order the Defendants, and all officers, agents, servants and employees to deliver up to this Court for destruction all Canopy Chairs or Related Chairs or otherwise directly misappropriating Plaintiff's product.

53. That the Defendants be ordered to account for and pay over all proceeds made by them from their wrongful breach of contract and to account for and pay to Plaintiff's damages in a sum determined by the Court.

54. That this Court order the Defendant to account to Plaintiff for any direct or indirect profits and revenues realized from or attributable to Defendants' manufacturing and sale of all Canopy Chairs or Related Chairs.

55. That this Court order Defendant to pay to Plaintiff the cost of this action, including reasonable attorneys fees and all other costs which may be incurred by Plaintiff.

56. That this Court grant to Plaintiff such other and further relief as it may deem just and equitable.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Renetto demands a trial by jury of all issues raised by the pleadings and triable of right by a jury.

Respectfully submitted,

Anthony F. Vittoria (VSB #41132)
Royal W. Craig
OBER, KALER, GRIMES & SHRIVER
A Professional Corporation
120 E. Baltimore Street
Baltimore, Maryland 21202
(410) 685-1120
(410) 547-0699 (facsimile)

*Attorneys for Plaintiff Renetto, LLC*



US 20070040422A1

## (19) United States
## (12) Patent Application Publication (10) Pub. No.: US 2007/0040422 A1
Reeb et al.      (43) Pub. Date: **Feb. 22, 2007**

(54) **CANOPY CHAIR**

(76) Inventors: David Reeb, Columbia, MD (US); Paul Robinette, Canal Winchester, OH (US)

Correspondence Address:
WILLIAM S RAMSEY, ESQ
5253 EVEN STAR PLACE
COLUMBIA, MD 21044 (US)

(21) Appl. No.: 11/486,176

(22) Filed: Jul. 12, 2006

**Related U.S. Application Data**

(60) Provisional application No. 60/701,905, filed on Jul. 22, 2005.

**Publication Classification**

(51) Int. Cl.
    *A47C 7/66* (2007.01)
(52) U.S. Cl. ............ 297/184.1; 297/184.15; 297/184.11

(57) **ABSTRACT**

An exemplary embodiment providing one or more improvements includes a frame which attaches to outdoor furniture, in particular to a chair, and a canopy. Embodiments can be moved from an overhead position to a behind the chair position. The frames can be moved form a collapsed to a fully extended position. In embodiments the canopy can be positioned to contain the collapsed frame and chair in the carrying position.







FIG. 1



FIG. 2



FIG. 3A  FIG. 3B  FIG. 3C



FIG. 4

Case 1:07-cv-06817  Document 36-3  Filed 01/15/2008  Page 16 of 20



FIG. 5

Case 1:07-cv-06817 Document 36-3 Filed 01/15/2008 Page 17 of 20



FIG. 6

FIG. 7



FIG. 8

FIG. 9



FIG. 10



FIG. 11